IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-10030 |
| | ) | |
| ALI SALEH KAHLAH AL-MARRI, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO COMPEL DISCLOSURE OF EVIDENCE**

NOW COMES the Defendant, ALI SALEH KAHLAH AL-MARRI, through his undersigned counsel, and for his motion to compel disclosure of evidence, states as follows:

On May 18, 2009, counsel for defendant Ali Saleh Kahlah Al-Marri requested that the government provide the defense with materials related to the brutal interrogations and treatment of the defendant when he was first detained as an enemy combatant at the Navy Brig in Charleston, South Carolina. These materials are relevant — indeed essential — to the sentencing of this matter because they go to the core of the defense's contention that the sentence to be imposed by the Court should reflect the unusually harsh treatment and conditions of confinement to which Al-Marri was subjected while incarcerated at the Brig, and that Al-Marri should receive at least full credit against any sentence imposed by the Court for the time he was incarcerated there, and perhaps greater than full credit in light of the severe treatment to which he was subjected. On August 13, 2009, the government provided the defense with extremely brief and entirely bland summaries of the interrogations to which Al-Marri was subjected while detained as an enemy combatant. By providing defendant Mr. Al-Marri with only these short summaries,

the government will undermine Mr. Al-Marri's right to a fair sentencing hearing by denying him information that relates to arguments that he may marshal in favor of a downward departure or adjustment from the otherwise pertinent advisory Guidelines range as well as, potentially to the fact and extent of credit that he will receive for the time that he spent in custody as an enemy combatant. The short summaries of the description of his interrogations provided to Mr. Al-Marri's counsel are inadequate because they deny him the ability to forcefully support his arguments at sentencing. Further, based upon the nature of the government's disclosure to date, Mr. Al-Marri anticipates that the government's summary of one or more videotapes of his interrogation will be equally lacking in detail and, consequently, will accordingly also be an insufficient replacement for the actual videotapes. In addition, the government's refusal to turn over documents pertaining to interrogation techniques applied to Mr. Al-Marri and documents concerning the government's destruction of records relating to his interrogation, impedes Mr. Al-Marri's ability to prepare for, and the Court's ability to impose, a fair sentence.

    Therefore, Mr. Al-Marri respectfully moves the Court to compel disclosure of all of the aforementioned evidence, under an appropriate protective order limiting its production, where necessary, to his defense counsel, who have obtained security clearance. As set forth in further detail below, this information is critical to defense counsel's preparation for sentencing. Although the government is justifiably embarrassed by the manner in which Mr. al-Marri was treated when first incarcerated at the Brig, that is not a sufficient reason for the government's refusal to provide full disclosure of these materials to the defense.

I.   BACKGROUND

On April 30, 2009, defendant Ali Saleh Kahlah Al-Marri, entered a plea of guilty to one count of conspiracy to provide material support or resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). Sentencing was originally scheduled for July 30, 2009, but, on June 18, 2006, the Court granted the parties' joint motion to adjourn that proceeding until October 29, 2009. Meanwhile, in connection with preparation for sentencing, on May 18, 2009, counsel for Mr. Al-Marri requested discovery from the government, including all materials relating to his treatment and interrogation during his pre-indictment detention as an "enemy combatant" from June 23, 2003 through February 27, 2009. (Ex. A) Counsel explained that these materials were especially significant with respect to arguments to be made concerning credit for prior custody. *Id.* In addition, counsel asked for all exculpatory information in the possession of the government. *Id.*

On July 24, 2009, the Court held a status conference with counsel to discuss the status of discovery. The Court resolved that the government would complete its discovery review and file a notice by July 31 regarding any requested discovery that had not been provided. The defense was required to respond concerning any outstanding discovery requests by August 17, 2009.

On July 30, 2009, the government responded to Mr. Al-Marri's discovery request concerning materials relating to interrogation and treatment by stating that it would provide "discovery relating to Mr. Al-Marri's treatment during the interrogation session to the extent that it supports your argument that the conditions of confinement at the Brig should qualify Mr. Al-Marri for credit for time served." (Ex. B) The government advised that it had identified 15 classified DIA documents that it would provide once approved for declassification. *Id.* The government, however, denied Mr. Al-Marri's request for materials "that relate to the application

of interrogation techniques to Mr. Al-Marri and materials pertaining to the participation of health care officials in interrogation" because "they are not relevant for the purposes of preparing for sentencing." *Id.* The government similarly denied Mr. Al-Marri's request for all materials pertaining to the destruction of recordings of, or documents regarding, Mr. Al-Marri's interrogation and treatment. *Id*[1]

On August 11, 2009 the government filed an *In Camera*, *Ex Parte* Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act, 18 U.S.C. App. 3, and Rule 16(d)(1) of the Federal Rules of Procedure, seeking to substitute summaries for the documents that contain classified information describing the interrogations. After reviewing the government's submission and apparently discussing the matter *ex parte* with the government's attorney, the Court granted the government's motion, permitting summaries and providing that the government did not have to disclose to Mr. Al-Marri's attorneys the original classified descriptions of his interrogations. On that same day, the government provided to Mr. Al-Marri's counsel the summaries of classified documents concerning Mr. Al-Marri's DIA interrogations. In telephone conversations with defense counsel, the government further advised that it would provide a summary of one or more videotapes documenting an interrogation of Mr. Al-Marri that reportedly included forcibly duct-taping his mouth closed. *See* Ex. C (NY Times Article).

---

[1] The government has provided some, and is in the process of providing all, of the logs regarding Mr. Al-Marri's activities at the Brig. As of last week, Brig personnel were, according to the government, in the process of compiling some 360,000 pages of material which will forthwith be provided to counsel for Mr. Al-Marri on computer disks.

4

## II. ARGUMENT

### A. The Summaries of Classified Documents on DIA Interrogations

The summaries that have thus far been produced are woefully inadequate. Specifically, the summaries do not sufficiently illuminate the nature of Mr. Al-Marri's interrogation sessions to allow him to argue that his sentence should, by way of departure or variance, fall beneath the range set by the United States Sentencing Guidelines based upon the brutal treatment to which he was subjected during the period of his custody as an enemy combatant, and to buttress his argument that he should receive credit for the time served in such custody, including the extent of that credit. The summaries provide almost no detail about what was actually done to Mr. Al-Marri; rather, they often simply describe in scattershot and fragmented sentences the aftermath of the interrogations, the effects of the chosen interrogation techniques upon him, and his perceived responses, without any context or sufficient descriptions.

The Classified Information Procedures Act was intended to "protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002); s*ee also United States v. Dumeisi*, 424 F.3d 566, 577 (7th Cir. 2005). Although the government's interest in national security is substantial, that interest "is nonetheless 'a qualified one' in the sense that it must give way when the information 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'" *United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (quoting *United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985) (quoting *Rovario v. United States*, 353 U.S. 53, 60-61 (1957))); *see also United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (citing *Rovario*, 353 U.S. at 60-61). Indeed, "the Government cannot invoke national

security concerns as a means of depriving [the defendant] of a fair trial." *United States v. Moussaoui*, 382 F.3d 453, 466 n. 18 (4th Cir. 2004).

These considerations are no less compelling in the sentencing context. "Due process also requires a defendant receive a fair sentencing hearing." *United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir. 1993). Indeed, exculpatory information, including all information "material either to guilt or punishment," in the possession of the government must be provided in connection with sentencing, just as it is in connection with trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Cone v. Bell*, -- U.S. --, 129 S.Ct. 1769, 1783 1786 (2009) (holding that "a full review of" favorable evidence withheld by the State was required because State's suppression of documents strengthening defense mitigation claim "may well have been material to [an] assessment of the proper punishment in this case"); *Severson*, 3 F.3d at 1013. In sum, the government is constitutionally obligated to disclose information relevant and helpful to a defendant's sentencing defense.

Here, the government should be ordered to provide Mr. Al-Marri and/or his counsel with the original documents describing his interrogations because they are relevant and necessary to his arguments that the harsh conditions of his confinement justify a sentence beneath the advisory Guidelines range, either as a matter of variance or of departure, and that he should receive credit for his time served in custody as an enemy combatant. It is well-established that the conditions of a defendant's pre-trial confinement may justify a reduced sentence. *See United States v. Ramirez-Gutierrez*, 503 F.3d 643, 646 (7th Cir. 2007) (acknowledging that "unusually harsh" conditions of confinement could warrant reduction in sentence); *United States v. Turner*, 569 F.3d 637, 642 n.1 (7th Cir. 2009) (finding no basis for "distinguish[ing] between" pretrial and pre-sentence conditions of confinement for purposes of determining whether a "reduced

sentence" is warranted); *see also United States v. Pressley*, 345 F.3d 1205, 1219 (11th Cir. 2003) (concluding that length and conditions of defendant's six-year-long pre-sentence confinement — which included five years in a 23-hour-a-day lock down without access to the outdoors — could, as a matter of law, support a downward departure in exercise of district court's discretion); *United States v. Carty*, 264 F.3d 191, 193, 197 (2d Cir. 2001) (instructing district court to consider defendant's request for downward departure based on pre-sentence conditions of confinement that included an eight-month-long detention in Dominican prison in an unlit, overcrowded cell).

Mr. al-Marri's pretrial confinement was unusually harsh, and his treatment uniquely brutal compared to other similarly situated criminal defendants. Yet, although defense counsel have been unable to consult the original documents, the summaries thus far provided are devoid of the detail necessary to portray an accurate and true picture of this treatment. Unless the defense is provided the original classified documents, Mr. Al-Marri will be deprived of critical information within the possession of the government — documents that, effectively constitute admissions by the government that the brutal treatment asserted and relied upon by the defendant in fact took place — that will support his forthcoming request for a downward variance or departure based upon the conditions of his pretrial confinement as an enemy combatant and for appropriate credit for his time served.

Indeed, any examination of the summaries of the classified documents concerning Mr. Al-Marri's interrogations by DIA leaves the reader persuaded that these fragmentary accounts cannot possibly compare with the more detailed accounts that must be offered in the classified documents. And, the omission of those details most certainly impinge upon Mr. Al-Marri's due process rights at sentencing. *See generally Williams v. New York*, 337 U.S. 241, 247 (1949)

(noting "modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information"). The discovery of classified information for the purpose of offering context so that a court can give the facts proper weight and consideration is critical to the defense of an accused. *Rezaq*, 134 F.3d at 1142. For example, "it might be appropriate in some circumstances to attribute a statement to its source, or to phrase it as a quotation." *Id.* Indeed, as the Supreme Court has noted, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 189 (1997)).

Here, the summaries' Spartan descriptions are stripped of the detail and context that may appear in the original classified documents which would be directly relevant and helpful to Mr. Al-Marri at sentencing in demonstrating that his "conditions were unusually harsh." *Ramirez-Gutierrez*, 503 F.3d at 646. For example, Summary #1 (Bates Stamp #000596) merely provides that, in a document dated September 15, 2009, guards observed that Mr. Al-Marri "was noticeably shaken by what the Interrogator had told him" and that as a result he trembled and prayed for five consecutive hours. From this summary, one does not know what the interrogator said, how long the interrogation session lasted, and what else occurred that might have led Mr. Al-Marri to react in this manner. But it is precisely those details that Mr. Al-Marri's counsel must know in order to understand and describe the nature of his treatment and, thereby, to establish Mr. Al-Marri's entitlement to a sentence beneath the advisory Guidelines range, as well as to augment his argument in favor of giving him credit for the time spent in pre-indictment custody as an enemy combatant.[2]

---

[2] On June 16, 2009, defense counsel wrote to the Director of the Federal Bureau of Prisons ("BoP"), Mr. Harley G. Lappin, seeking BoP's position with respect to the computation of credit, pursuant to 18 U.S.C. § 3585(b), for the

Summary #5 (Bates Stamp #000600) states in its entirety: "In a document dated 20 December 2003, the following event was noted: Instead of another interview in the booth, 052 saw daylight for the first time in nearly six months." The brevity and lack of any detail here renders it extremely difficult for defense counsel to adequately describe to the Court the nature of Mr. Al-Marri's treatment and conditions, as described and conceded by government officials. Greater detail concerning the conditions whereby Mr. Al-Marri was deprived of sunlight is directly relevant and helpful to Mr. Al-Marri's arguments to be made at sentencing.

Similarly, Summary #7 (Bates stamp # 000602) describes an interrogator threatening to have Saudi and Qatari authorities round up Mr. Al-Marri's family if he refused to cooperate. Additional details concerning this threat, *i.e.*, what was said and how this was both intended to and did affect Mr. Al-Marri, are obviously also essential to his sentencing arguments. And Summary #11 (Bates Stamp #000606) and Summary #12 (Bates Stamp #000609) provide only a stark and minimal description of the circumstances surrounding the removal and subsequent denial of Mr. Al-Marri's Koran. No mention is made of how these actions were implemented by interrogators or their impact upon Mr. Al-Marri; such descriptions from government officials are certainly relevant to Mr. Al-Marri's sentencing and could and should affect the quantum of his punishment. *See Cone*, 129 S.Ct. at 1783 (remanding to determine whether *Brady* violation affected sentencing); *Banks v. Dretke*, 540 U.S. 668, 702-03 (2004) (finding Brady violation

---

time that Mr. Al-Marri spent in detention from June 23, 2003 through February 27, 2009. Counsel noted that Mr. Al-Marri should be given credit for the time that he served in military detention because it was ordered based upon precisely the same offense for which he was indicted and detained, to which he pleaded guilty and for which sentence will be imposed. (Ex D). On July 8, 2009, Paul W. Layer, Associate General Counsel for the BoP, wrote to defense counsel in response, declining to provide BoP's position and noting that "[t]he government's position regarding prior custody credit in [Mr. Al-Marri's] case will be presented by the prosecutor at the appropriate time." (Ex E). On July 24, 2009, the Court ordered the Government to file by October 2, 2009, "their position on what credit, if any, should be given to Defendant for time served including military." The Court instructed defense counsel to file their position as to the same by October 16, 2009.

denied defendant a fair penalty phase proceeding because suppression of true role of government witness in proceedings could have affected jury decision as to punishment).

The summaries also lack context and, thus, deprive Mr. Al-Marri of critical information, without which these facts do not present a complete or even accurate picture of Mr. Al-Marri's interrogation and treatment. For example, Summary #6 (Bates Stamp #000601) states that one interrogation session lasted nine hours. The very next sentence refers to the commencement of yet another interrogation session. The summary alone, then, does not reveal how close in time these interrogation sessions were conducted, a fact directly relevant to any assessment of their severity. *See Davis v. North Carolina*, 384 U.S. 737, 752 (1966) (that interrogations occurred repeatedly over the course of 16-day confinement was relevant to the coercive conditions of confinement, even where "each individual interrogation session was of relatively short duration"); *Ashcraft v. Tennessee*, 322 U.S. 143, 153-54 (1944) (describing interrogation over thirty-six day period as "irreconcilable with the possession of mental freedom"); *Withrow v. Williams*, 507 U.S. 680, 693 (1993) (noting that length, continuity, and location of interrogation are factors relevant to coerciveness). A fuller understanding of these interrogation sessions, and how they relate to one another in time, would likely be provided by the original document. Hence, the original reports are critical to Mr. Al-Marri's sentencing arguments.

For these reasons and those to be set forth at the hearing on this matter scheduled for September 3, 2009, defendant Al-Marri respectfully submits that the original classified documents are relevant and necessary to the arguments he will make at sentencing, both with respect to length of his sentence and, potentially, to the fact and extent of the credit he should receive for the time he served in custody as an enemy combatant. Therefore, the original classified documents describing Mr. Al-Marri's interrogations are discoverable and should be

disclosed to the defense. It may be that an appropriate protective order should be entered to protect any dissemination of these materials beyond that necessary for Mr. Al-Marri to fully defend himself at sentencing. But any concerns with respect to national security that might hypothetically be engendered by the disclosure of these materials to defense counsel are alleviated by the fact that Mr. Al-Marri's counsel have long held Top Secret security clearance and have been provided with access to classified information throughout the course of this case without any breach of protocol or threat to national security. Additionally, any disclosure will be made under the supervision and aegis of the Court Security Officer.

### B.    The Proposed Summary of the Videotape Documenting an Interrogation

The government has expressed its intention to submit a summary of one or more videotapes which, according to press reports, depict *inter alia*, an interrogation of Mr. Al-Marri, at which interrogators roughly placed duct tape on his mouth. For the same reasons discussed above, a summary of the images on the videotape akin to the summaries that already have been provided to defense counsel (although counsel have obviously not seen any summaries of videotapes) will prejudice Mr. Al-Marri's ability to fully and accurately depict the extent of the harsh interrogation to which he was subjected and how that interrogation should factor into Mr. Al-Marri's sentence. Mr. Al-Marri respectfully submits that the videotape is discoverable and should be disclosed to the defense.

### C.    Documents Relating to the Application of Interrogation Techniques and the Participation of Health Care Officials in Interrogation

The government inexplicably maintains that documents "that relate to the application of interrogation techniques to Mr. Al-Marri and materials pertaining to the participation of health care officials in interrogation" are not relevant with respect to sentencing. Ex. B, at 2. These documents are critical to the defense's arguments that the conditions of Mr. Al-Marri's

11

confinement were sufficiently harsh to justify a reduction in his sentence and otherwise bear upon his arguments with respect to the extent of the credit that should be provided for the time that he served at the Brig. Indeed, descriptions of the interrogation techniques that were applied to Mr. Al-Marri are precisely what are missing from the summaries provided to date. Yet, such descriptions are exactly what are necessary to demonstrate the treatment to which he was subjected. *See Rezaq*, 134 F.3d at 1142. That is, in order for Mr. Al-Marri to demonstrate that the conditions of his pre-trial confinement were sufficiently harsh to merit a sentence beneath the advisory Guidelines range, *see Ramirez-Gutierrez*, 503 F.3d at 646, and perhaps to obtain the appropriate credit for the time served in custody, Mr. Al-Marri will be required to establish the manner in which his interrogations took place. The documents that the government has refused to provide will do just that, supplementing, refreshing, and corroborating Mr. Al-Marri's own, undocumented recollection. At the very least, defense counsel, who have Top Secret security clearance, should be entitled to review these documents and to present them to the Court, under appropriate safeguards, to establish Mr. Al-Marri's sentencing arguments. Therefore, the Court should order the government to produce these documents to the defense.

  **D. Documents Relating to the Destruction of Materials Concerning Interrogations of Mr. Al-Marri**

  The government has also denied Mr. Al-Marri's request for all materials pertaining to the destruction of documents, recordings, or other records concerning Mr. Al-Marri's interrogation, treatment and conditions of confinement, because it believes such information is "not relevant for the sentencing." Ex. B, at 3. Of course, the destruction of these documents itself raises an adverse inference that the materials destroyed constituted incriminating evidence, in this case evidence regarding the use of unlawful interrogation techniques to which Mr. Al-Marri was subjected. *See, e.g., Crabtree v. National Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001) ("[I]f,

being sensitive to the possibility of a suit, a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence.") (quoting *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 272 (7th Cir. 1993)). Materials relating to the destruction of any documents would bear upon the strength of this inference and may, in particular, reveal that these recordings were destroyed specifically in order to cover up the unlawful nature of these interrogation sessions. Mr. Al-Marri is not required to accept the government's self-interested representation that the tapes were destroyed in good faith or that defense counsel has "been provided with any and all information regarding Mr. Al-Marri's treatment while at the Brig." Ex. B, at 3.

The fact is undisputed that tapes of Mr. Al-Marri's interrogations once existed and have now been destroyed. If those tapes were destroyed in good faith then the government should have nothing to fear; if they were destroyed in bad faith, in an effort to cover up brutal or unlawful treatment, such motive is relevant to the Court's assessment of the government's arguments in opposition to the defendant's characterization of the treatment to which he was subjected. Thus, the reason for the government's destruction of the videotapes is highly probative as a matter of law because it is essential to the Court's assessment of the evidence in this case, and of what was on those now absent recordings. *See Park v. City of Chicago*, 297 F.3d 606 (7th Cir. 2002) ("The crucial element is not that evidence was destroyed but rather the reason for the destruction"); *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) (destruction of relevant documents in the absence of good faith, warrants "a presumption that the missing record[s] contained evidence adverse to the violator"); *see also Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) (police officers' bad faith failure to preserve potentially useful evidence would amount to denial of due process to criminal defendant). Consequently,

the Court should order the government to disclose all documents pertaining to this destruction, including documents relating to any investigations on the subject.

## CONCLUSION

For the reasons set forth above, defendant Ali Saleh Kahlah Al-Marri, respectfully requests that the Court grant his motion to compel discovery of all original documents describing DIA interrogations of Mr. Al-Marri; the requested videotape(s) of *inter alia*, Mr. Al-Marri's interrogation involving the forcible duct taping of his mouth; all documents relating to the application of interrogation techniques to Mr. Al-Marri; and all materials pertaining to the destruction of documents, recordings, or other records concerning Mr. Al-Marri's interrogation, treatment and conditions of confinement.

Respectfully submitted,

**GIBBONS P.C.**
*Attorneys for Defendant*
Ali Saleh Kahlah Al-Marri

By: /s/ Lawrence S. Lustberg
Lawrence S. Lustberg

Dated: August 17, 2009