E-FILED
Tuesday, 18 August, 2009 09:24:14 AM
Clerk, U.S. District Court, ILCD

E-FILED
Monday, 17 August, 2009 05:20:12 PM
Clerk, U.S. District Court, ILCD

# Exhibit A



GIBBONS FELLOWSHIP IN
PUBLIC INTEREST & CONSTITUTIONAL LAW

JOHN J. GIBBONS
SENIOR PARTNER

LAWRENCE S. LUSTBERG
DIRECTOR

JENNIFER B. CONDON
AVIDAN Y. COVER

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Phone: 973.596.4500

May 18, 2009

David E. Risley
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701

> Re: *United States of America v. Ali Saleh Kahlah Al-Marri,*
> *No. 09-CR-10030*

Dear David:

In connection with our preparation for Mr. Al-Marri's sentencing scheduled for July 30, 2009, we hereby request certain materials that we understand to be in the possession of the government. Specifically, we seek, hopefully without the necessity of applications to the Court, materials relating to (1) the treatment, including interrogation, of Mr. Al-Marri during the period of his pre-indictment detention as an "enemy combatant;" (2) the submissions of the parties to the United States District Court for the Southern District of Florida and the United States Court of Appeals for the Eleventh Circuit, regarding the sentencing of defendant Jose Padilla, particularly with respect to his successful effort to be granted credit for the time served during the time of his pre-indictment detention as an "enemy combatant;" and (3) any and all exculpatory (Brady) information that the government has not, as of yet, provided to Mr. Al-Marri. These requests are described in somewhat more detail below but we are, of course, ready and willing to discuss these with you or your colleagues at the Department of Justice, should that be helpful to achieving a prompt and amicable resolution of this request.

First, Mr. Al-Marri requests all materials relating to his treatment and interrogation, during his pre-indictment detention as an "enemy combatant" from June 23, 2003 through February 27, 2009, so that he may review these materials and provide them to the Court in connection with his potential application for credit for time served in custody, pursuant to 18 U.S.C. §§ 3585(b) and 3553(a)(2). In particular, Mr. Al-Marri requests that he be provided any and all materials relating to his detention, interrogation, treatment, physical or mental condition, and his conditions of confinement at the Naval Consolidated Brig, Charleston, South Carolina from June 23, 2003 through February 27, 2009. *See* Decl. of Robert H. Berry, Jr., Principal Deputy General Counsel of the Defense Intelligence Agency, ¶ 8, *Al-Marri v. Gates,* Civ. No.

GIBBONS P.C.

David E. Risley
Assistant United States Attorney
May 18, 2009
Page 2

2:05-cv-02259-HFF-RSC (D.S.C.) (Apr. 30, 2008) ("[E]xisting documentation relating to the interrogations was retained and is being protected."); *id.* at ¶ 9 (declaring the Government still has original or duplicate recordings of nine interrogation sessions, including one depicting the taping of Almarri's mouth); *See also* Mark Mazzetti & Scott Shane, *Pentagon Cites Tapes Showing Interrogations*, N.Y. Times, March 13, 2008 (citing Defense Department officials description of 50 tapes depicting interrogations of Almarri and Jose Padilla at the naval brig). This requests includes, but is not limited to, the following:

- Any memoranda concerning the application of interrogation techniques to Mr. Al-Marri, including daily logs, incident reports, investigative reports reflecting concerns over abuse or mistreatment of Mr. Al-Marri, e-mails, status reports, institutional requests for change(s) in Al-Marri's status of confinement, documents authorizing departure from the Navy Corrections Manual or the Geneva Conventions, policies or other documents pertaining to participation of health care officials in interrogation, documents reflecting concerns among military officials about interrogation procedures, all materials describing or proposing corrective action in response to concerns of detainee mistreatment, all materials gathered by Vice Admiral Church in his review of detainee operations at the Charleston Brig, and all reports, documents, or communications produced as a result of Church's investigation.

- Institutional policies governing the enemy combatant mission at the Charleston Brig, including any documents outlining "standard operating procedures," any documents directing that policies or procedures in place for detention of enemy combatants at other locations be applied at the Charleston Brig and all documents describing the underlying policies and all procedures applied at those other locations.

- Any reports of psychological or psychiatric observation, examinations and treatment, including medication, reports of physical health observation, examinations and treatment, including medication, and video or audio recordings pertinent to his detention, interrogation, treatment, physical or mental condition, and his conditions of confinement. *See* Declaration of John Pucciarelli, Cmdr., USN, Naval Consolidated Brig, Charleston, South Carolina, ¶ 5, *Al-Marri v. Gates*, Civ. No. 2:05-cv-02259-HFF-RSC (D.S.C.) (Apr. 29, 2008) (describing preservation of records concerning Al-Marri's discipline, communication, medical visits, interaction with staff, among other daily activities).

- Any materials and documents pertaining to the destruction of documents, recordings, or other records reflecting any of the subject matter described above. Berry Decl. at ¶ 10 (declaring the remaining interrogation recordings are held in the office of the Defense Intelligence Agency Inspector General, as well as materials relating to the inquiry into the destruction of recordings).

GIBBONS P.C.

David E. Risley
Assistant United States Attorney
May 18, 2009
Page 3

Second, Mr. Al-Marri requests that he (through his counsel) be provided any documents that have been filed with either the United States District Court for the Southern District of Florida, which information is currently publicly unavailable, regarding the application of defendant Jose Padilla to be granted credit for the time that he was detained as an "enemy combatant" at the Naval Brig.  In particular, in *United States of America v. Jose Padilla*, No. 04-60001-CR (MGC) (S.D.Fla.), the Honorable Marcia G. Cooke, United States District Judge, granted Padilla credit for his three and one-half years of detention at the Brig, finding that such detention, and his harsh treatment, justified a variance from the applicable sentencing guidelines, and a sentence far less than the term of life imprisonment to which he was exposed.  Kirk Semple, *Padilla Sentenced to 17 Years in Prison*, N.Y. Times, Jan. 22, 2008.  Mr. al-Marri here requests similar credit for what was undoubtedly similar treatment, in the same location.  The arguments for and against the credit granted Padilla, and the court's response to these arguments, may well inform Mr. al-Marri's submissions to the Court; he requests, therefore, the opportunity to examine those materials, as one may with respect to similar cases in the usual case, so that he may evaluate and, to the extent appropriate, advance the same or similar positions here.

Third, and finally, Mr. Al-Marri requests that he be provided all exculpatory information, including all information "material either to guilt or punishment," in the possession of the government pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The suppression of such information violates a defendant's due process rights in connection with sentencing no less than in connection with trial.   *See, e.g., United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir. 1993) (holding *Brady* applies to sentencing hearing and remanding for reconsideration of sentence based upon newly discovered evidence) (citing *United States v. Radix Lab., Inc.*, 963 F.2d 1034, 1039 (7th Cir. 1992)); *United States v. Nash*, 29 F.3d 1195, 1202 n.3 (7th Cir. 1994); *United States v. Guerrero*, 894 F.2d 261, 268 (7th Cir. 1990).  To the extent that the government has, within its possession, information that bears upon his culpability, as Mr. al-Marri believes it does based upon his, and his attorneys', conversations with you, then that information should be provided to his in order to ensure that he receive a fair sentencing hearing.

Again, should you have any questions about, or require any clarification regarding, these materials, please do not hesitate to call me, either in my office at (973) 596-4731 or on my cell phone at (201) 407-4765/.

As always, thank you for your kind consideration and best regards.

Sincerely yours,

Lawrence S. Lustberg

LSL/leo

GIBBONS P.C.

David E. Risley
Assistant United States Attorney
May 18, 2009
Page 4

cc:     Andrew J. Savage, III, Esq.
        L. Lee Smith, Esq.
        Mark A. Berman, Esq.
        Jonathan L. Hafetz, Esq.
        Sharon Lever, Esq.
        Joanna Baltes, Esq.

# Exhibit B



**U.S. Department of Justice**

National Security Division

---

*Counterterrorism Section*                                    *Washington, D.C. 20530*

July 30, 2009

<u>**Via Fax 973-639-6285**</u>

Lawrence S. Lustberg, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310

      Re:    *United States v. Al-Marri*, No.09CR 10030

Larry,

As promised, this letter provides a final response to your request for discovery dated May 18, 2009. I have completed the review of classified DIA documents and have identified an additional 15 documents that I will provide to you once I have received the appropriate declassification approvals. In addition, discovery relating to the weekly Brig logs will be sent to you today. I am still waiting on electronic records from the Brig that we had to re-request due to issues with proprietary software. I anticipate receiving that material next week and will forward to you as soon as possible. That material includes a journal compiled by the Brig that details information from the weekly logs and references any disciplinary action.

I've also included the following responses to your requests for information below so that you can formulate your motion to compel due to the Court on August 17, 2009.

1.    *Any memoranda concerning the application of interrogation techniques to Mr. Al-Marri, including daily logs, incident reports, investigative reports reflecting concerns over abuse or mistreatment of Mr. Al-Marri, e-mails, status reports, institutional requests for change(s) in Al-Marri's status of confinement, documents authorizing departure from the Navy Corrections Manual or the Geneva Conventions, policies or other documents pertaining to participation of health care officials in interrogation, documents reflecting concerns among military officials about interrogation procedures, all materials describing or proposing corrective action in response to concerns of detainee mistreatment, all materials gathered by Vice Admiral Church in his review of detainee operations at the Charleston Brig, and all reports, documents, or communications produced as a result of Church's investigation.*

1

You have been provided with all documents that existed concerning any abuse or mistreatment of Mr. Al-Marri, including daily logs, incident reports or investigative reports; institutional requests for changes in Al-Marri's status of confinement, documents authorizing departure from the Navy Corrections Manual or the Geneva Conventions; and materials describing or proposing corrective action in response to concerns of Al-Marri's treatment; in addition to all documents which referenced complaints made by Mr. Al-Marri regarding mistreatment by Brig staff.

Your request for documents that relate to the application of interrogation techniques to Mr. Al-Marri and materials pertaining to the participation of health care officials in interrogation are denied on the basis that they are not relevant for the purposes of preparing for the sentencing. You will be provided with discovery relating to Mr. Al-Marri's treatment during the interrogation session to the extent that it supports your argument that the conditions of confinement at the Brig should qualify Mr. Al-Marri for credit for time served.

You also requested materials relating to the Church investigation. That report is available online at the following address: http://www.dod.mil/pubs/foi/detainees/index.html along with other documents regarding detainee treatment. I will also include a printed version of the report in the discovery being sent to you today.

2.   *Institutional policies governing the enemy combatant mission at the Charleston Brig, including any documents outlining "standard operating procedures," any documents directing that policies or procedures in place for detention of enemy combatants at other locations be applied at the Charleston Brig and all documents describing the underlying policies and all procedures applied at those other locations.*

To the extent that they exist, you have been provided with documents that relate to the policies and procedures in place for enemy combatants at the Charleston Brig. Your request for documents relating to policies and procedures for enemy combatants at other locations is denied on the basis that the request is not relevant to the issue of whether your client should be given credit for time served while in the Charleston Brig.

3.   *Any reports of psychological or psychiatric observation, examinations and treatment, including medication, reports of physical health observation, examinations and treatment, including medication, and video or audio recordings pertinent to his detention, interrogation, treatment, physical or mental condition, and his conditions of confinement. See Declaration of John Pucciarelli, Cmdr., USN, Naval Consolidated Brig, Charleston, South Carolina, ¶ 5, Al-Marri v. Gates, Civ. No. 2:05-cv-02259-HFF-RSC (D.S.C.) (Apr. 29, 2008) (describing preservation of records concerning Al-Marri's discipline, communication, medical visits, interaction with staff, among other daily activities).*

As we discussed when I was in Charleston, Mr. Al-Marri's medical file was sent to the Bureau of Prisons when he was transferred to U.S. Marshal's custody. You indicated you would attempt to

retrieve a copy from BOP.  Please let me know if you encounter any problems obtaining those records.  To the extent that any medical information or conditions of confinement information were included in the documents reviewed at the Brig, they were included in the initial discovery batch.  Additionally, you will be provided with DIA documents that may contain references to Mr. Al-Marri's conditions of confinement at the Brig.

Also as we discussed and I believe you and co-counsel are aware, the Brig maintains video recordings of your client while confined at the Brig.  They represent thousands of hours of video recording.  To the extent that you are interested in a particular date, please let me know so that we can facilitate such a request.  Your request for video or audio recordings pertinent to the interrogation of Mr. Al-Marri is denied on the basis that they are not relevant to sentencing. As indicated *supra*, you will be provided with discovery relating to Mr. Al-Marri's treatment during the interrogation sessions to the extent that it supports your argument that the conditions of confinement at the Brig should qualify Mr. Al-Marri for credit for time served.

4.      *Any materials and documents pertaining to the destruction of documents, recordings, or other records reflecting any of the subject matter described above.  Berry Decl. at ¶ 10 (declaring the remaining interrogation recordings are held in the office of the Defense Intelligence Agency Inspector General, as well as materials relating to the inquiry into the destruction of recordings).*

Your request is denied on the basis that the requested information is not relevant for the sentencing.  You have been provided with any and all documents regarding Mr. Al-Marri's treatment while at the Brig, including conditions of confinement that are relevant to your argument that Mr. Al-Marri be given credit for time served.

Please do not hesitate to contact me if you have any questions about the government's position on your request for discovery.

Very truly yours,

s/Joanna Baltes

Joanna Baltes
Trial Attorney

cc:     Honorable Michael M. Mihm
        David Risley, Esq.
        Andrew J. Savage III, Esq.
        L. Lee Smith, Esq.
        Mark A. Berman, Esq.

3

# Exhibit C

Westlaw.

The New York Times

3/13/08 NYT A1

Page 1

3/13/08 N.Y. Times A1
2008 WLNR 4882980

New York Times (NY)
Copyright 2008 The New York Times Company

March 13, 2008

Section: A

## Pentagon Cites Tapes Showing Interrogations

MARK MAZZETTI and SCOTT SHANE

WASHINGTON   The Defense Department is conducting an extensive review of the videotaping of interrogations at military facilities from Iraq to Guantanamo Bay, and so far it has identified nearly 50 tapes, including one that showed what a military spokesman described as the forcible gagging of a terrorism suspect.

The Pentagon review was begun in late January after the Central Intelligence Agency acknowledged that it had destroyed its own videotapes of harsh interrogations conducted by C.I.A. officers, an action that is now the subject of criminal and Congressional investigations.

The review was intended in part to establish clearer rules for any videotaping of interrogations, Defense officials said. But they acknowledged that it had been complicated by inconsistent taping practices in the past, as well as uncertain policies for when tapes could be destroyed or must be preserved.

The officials said it appeared that only a small fraction of the tens of thousands of interrogations worldwide since 2001 had been recorded.

The officials said the nearly 50 tapes they identified documented interrogations of two terrorism suspects, Jose Padilla and Ali al-Marri, and were made at a Navy detention site in Charleston, S.C., where the two men have been held.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

The initial findings of the Pentagon review represent the first official acknowledgment that military interrogators had videotaped some sessions with detainees and could widen the controversy over the treatment of prisoners in American custody. A Pentagon spokesman, Geoff Morrell, cautioned that the review was incomplete, and a spokesman for the Defense Intelligence Agency, Don Black, said that interrogation videotapes had been routinely destroyed if they were judged to have no continuing value.

The only tape described by officials is of Mr. Marri, a citizen of Qatar who was arrested in December 2001 while in college in Illinois and moved five years ago to the jail after being designated an "enemy combatant." Government officials say they believe he was an operative for Al Qaeda who was plotting attacks.

Two government officials said that the tape showed Mr. Marri being manhandled by his interrogators, but did not show waterboarding or any other treatment approaching what they believed could be classified as torture. According to one Defense Department official, the interrogators dispensing the rough treatment on the tape were F.B.I. agents.

An F.B.I. spokesman declined to comment, citing a continuing review of detention practices that is being carried out by the Department of Justice's inspector general.

Mr. Black, the spokesman for the Defense Intelligence Agency, said its director, Lt. Gen. Michael D. Maples, had reviewed the tape and was satisfied that Mr. Marri's treatment was acceptable.

He said that Mr. Marri was chanting loudly, disrupting his interrogation, and that interrogators used force to put duct tape on his mouth, while Mr. Marri resisted. Mr. Black said most of the videos showing Mr. Marri's interrogations had been destroyed. The government has never charged Mr. Marri, but because of his designation as an enemy combatant, the Pentagon is allowed to hold him indefinitely.

The scale of detention and interrogation by the military, with tens of thousands of prisoners in Iraq, Afghanistan and at Guantanamo Bay, Cuba, dwarfs that of the C.I.A., which has held fewer than 100 high-level Qaeda suspects. The C.I.A. has acknowledged videotaping only two terrorism suspects, in 2002, and military officials said that the review, ordered in late January by James R. Clapper, the Pentagon's senior intelligence official, had similarly found that only a small number of detainee interrogations had been videotaped.

"This is not a widespread practice," said Mr. Morrell, the Pentagon press secretary. He said that it was up to individual military commanders whether to tape interrogations and that the videotapes were often used as the basis of written intelligence reports. In addition to the existing interrogation videotapes, there are existing recordings that show interactions between military guards and

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

terrorism suspects, including detainees' forcible removal from cells at Guantanamo, military officials said.

Images of rough treatment of detainees is a delicate subject for the Pentagon. Soldiers' snapshots of the abusive treatment of detainees at the Abu Ghraib prison in Iraq set off a firestorm and led to prison terms for a number of military personnel.

Congress imposed a ban in 2005 on all harsh interrogation methods by the military but left a loophole for the C.I.A. Last month, Congress voted to extend the ban to the C.I.A., but President Bush vetoed the bill.

The C.I.A. acknowledged in December that in 2005 it had destroyed the only interrogation videotapes that its officers had made; the tapes showed two detainees, Abu Zubaydah and Abd al- Rahim al-Nashiri.

Lawyers for Mr. Marri, who have challenged his imprisonment in court, sought access to any tapes or other records of his interrogations, but in 2006 a federal judge in South Carolina said the government did not have to produce any tapes. That decision is being appealed.

Jonathan Hafetz, one of the lawyers, said Mr. Marri had heard guards describe "a cabinet full of tapes" showing his interrogations, but had never had independent confirmation that such tapes existed. Mr. Marri has alleged that earlier in his imprisonment he was deprived of sleep, isolated and exposed to prolonged cold.

Mr. Hafetz said he planned to file papers in court on Thursday describing the psychological harm done to Mr. Marri. "Locking someone up for five years without charges is a disgrace and a betrayal of American and constitutional values," he said.

The difficulties in the Pentagon's review can be glimpsed in a seven-page court filing last month by Rear Adm. Mark H. Buzby, the military commander at Guantanamo Bay.

Admiral Buzby's report describes an array of digital video recorders used to capture "activities" -- it does not specify whether interrogations are included -- in at least four subcamps at Guantanamo. But the systems automatically recorded over older material when they reached capacity, he wrote.

In some cases, Admiral Buzby wrote, "We suspect that the recording devices contain recorded data but we are unable technologically to confirm whether data remains."

PHOTO: Ali al-Marri.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

A front-page article on Thursday about a Pentagon review of videotaping of interrogations misstated the legal status of Ali al-Marri, who has been imprisoned by the military since 2003 after being designated an enemy combatant. Mr. Marri is challenging the Pentagon's assertion that it has the right to hold him indefinitely; the issue of whether the Pentagon can indeed do that has not been settled legally. (A federal appeals court panel ruled 2 to 1 in June that Mr. Marri's detention violated the Constitution, a decision that is under review by the United States Court of Appeals for the Fourth Circuit.)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit D



GIBBONS FELLOWSHIP IN
PUBLIC INTEREST & CONSTITUTIONAL LAW

JOHN J. GIBBONS
SENIOR PARTNER

LAWRENCE S. LUSTBERG
DIRECTOR

JENNIFER B. CONDON
AVIDAN Y. COVER

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Phone: 973.596.4500

June 16, 2009

Mr. Harley G. Lappin
Director
Federal Bureau of Prisons
320 First St., NW
Washington, D.C. 20534

Re: ***United States of America v. Ali Saleh Kahlah Al-Marri,***
***No. 09-CR-10030***

Dear Mr. Lappin:

In connection with our preparation for defendant Ali Saleh Kahlah Al-Marri's sentencing, currently scheduled for July 30, 2009, we hereby write to seek the position of the Federal Bureau of Prisons ("BoP")with respect to the computation of credit, pursuant to 18 U.S.C. § 3585(b), for the time that Mr. Al-Marri spent in detention from June 23, 2003 through February 27, 2009. The BoP's position regarding whether it will or will not give Mr. Al-Marri credit for the time he spent in custody is critical to arguments that Mr. Al-Marri may make to the Court with respect to his sentencing. In particular, in the event the BoP will not accord credit to him for his period of detention, Mr. Al-Marri anticipates requesting that the Court should, pursuant to U.S.S.G. § 5G1.3(b), vary from the applicable Sentencing Guidelines and reduce his sentence by at least the length of that detention, as other courts did for similarly situated defendants, Jose Padilla, John Walker Lindh, and others. Whether or not such an adjustment will be made by the Court depends, under § 5G1.3(b)(1), on whether the BoP will credit the prior detention to the sentence. See U.S.S.G. § 5G1.3, App. Note 2(C). As is set forth below, in considering this request, we respectfully submit that the BoP should consider that Mr. Al-Marri's prior detention, in military custody as an "enemy combatant," was in fact based upon precisely the same offense for which Mr. Al-Marri now stands convicted on a guilty plea, and will be sentenced. Accordingly, pursuant to the statute, Mr. Al-Marri is entitled to credit for the full duration -- 68 months and 4 days -- of his prior detention.[1]

---

[1] In addition, the Department of Justice has always conceded that Mr. Al-Marri is entitled to 18 months and 11 days credit for the time he spent in detention, from December 12, 2001 -- the date of his initial arrest as a material witness -- to June 23, 2003 -- the date that he was transferred to the custody of the military, and to day-to-day credit for the time he has spent in detention since he was indicted on February 27, 2009 until the date that his sentence of imprisonment commences.

GIBBONS P.C.

More specifically, pursuant to 18 U.S.C. § 3585(b), Mr. Al-Marri is entitled to credit for the time he served at the Naval Consolidated Brig in Charleston, South Carolina from June 23, 2003 through February 27, 2009 on the basis of the allegations that he was an "enemy combatant," because the time was served in official detention as a result of exactly the same conduct as underlies his plea of guilty, and for which the United States District Court will impose sentence. Section 3585(b) provides in relevant part:

> (b) Credit for prior custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences --

> (1) as a result of the offense for which the sentence was imposed.

18 U.S.C. § 3585(b)(1). The BoP has interpreted the term "official detention" to mean "time spent under a federal detention order." U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28 (CN-03) (Feb 14, 1997) (Page 1-14F).

There really can be no question but that Mr. Al-Marri spent time under a federal detention order and was therefore in "official detention" from June 23, 2003 to February 27, 2009. A Presidential directive on June 23, 2003, ordered that the Attorney General transfer Mr. Al-Marri to the custody of the Secretary of Defense and that the Secretary of Defense detain him as an "enemy combatant." President's Order, Al-Marri ex rel. Berman v. Hanft, Att. A (D.S.C. Sept. 9, 2004) (No. 2:04-2257-26AJ) (attached herein as Exhibit A) ("[T]he Attorney General is directed to surrender Mr. al-Marri to the Secretary of Defense, and the Secretary of Defense is directed to receive Mr. al-Marri from the Department of Justice and to detain him as an enemy combatant."). Such detention, albeit by the Secretary of Defense, was certainly "official," and only ceased upon the transfer of Mr. Al-Marri back to the Attorney General based upon a superseding Presidential directive issued on February 27, 2009 ordering the transfer. President's February 27, 2009 Memorandum for the Secretary of Defense, Submitted as Addendum B to Application Respecting the Custody and Transfer of Petitioner Ali Saleh Kahlah Al-Marri, Al-Marri v. Spagone, No. 08-368 (attached herein as Exhibit B). See also Al-Marri v. Spagone, 555 U.S. ___, 129 S. Ct. 1545 (2009) (granting application seeking to release Al-Marri from military custody and to transfer him to the custody of Attorney General). Whatever the agency that was holding him, it is indisputable that Mr. Al-Marri's detention -- in his case in military custody pursuant to the Presidential directive -- was unquestionably time spent under a federal detention order and thus constitutes "official detention" under 18 U.S.C. § 3585(b)(1).

There is also little question but that Mr. Al-Marri should be given credit for the time that he served in military detention because it was ordered based upon precisely the same offense for which he was indicted and detained, to which he pleaded guilty and for which sentence will be imposed. Specifically, in support of his detention as an "enemy combatant," the Government submitted a declaration setting forth the information upon which the government relied in designating and detaining him as an "enemy combatant." See Declaration of Mr. Jeffrey N. Rapp, Al-Marri ex rel. Berman v. Wright, 443 F. Supp. 2d 774 (D.S.C. 2006) (No. 2:04-2257-HFF-RSC) (attached herein as Exhibit C); Al-Marri v. Wright, 487 F.3d 160, 165 (4th Cir. 2007) (describing Government's reliance on Rapp Declaration in its answer to Mr. Al-Marri's habeas

GIBBONS P.C.

petition), opinion replaced by, on rehearing at, en banc, Al-Marri v. Pucciarelli, 534 F.3d 213, 220 (4th Cir. 2008) (en banc) (same), vacated by Spagone, 555 U.S. at ___, 129 S. Ct. 1545, at ___. That information is indistinguishable in any material way from the facts asserted by the Government at Mr. Al-Marri's pretrial detention hearing and which provided the factual basis for his guilty plea. With respect to his pretrial detention, the Government's description of the facts supporting the charges against Mr. Al-Marri virtually track the Rapp Declaration. Compare Transcript of Detention Hearing at 18-19, 80, United States of America v. Ali Saleh Kahlah Al-Marri, No. 2:09-CR-263 (RSC) (March 18, 2009) (attached herein as Exhibit D) with Declaration of Mr. Jeffrey N. Rapp at ¶¶ 8-35. As just one example both the Rapp Declaration and the Government's presentation of facts at the pretrial detention hearing describe Mr. Al-Marri as an associate of Khalid Sheikh Mohammed, who trained at terrorist camps, tried to communicate with Khalid Sheikh Mohammed and Mustafa al Hawsawi, and used his computer to research toxins. See Rapp Decl. ¶¶ 8, 10, 17-18, 19-24, 28-30; Transcript of Detention Hearing at 18-19, 80. With respect to Mr. Al-Marri's plea agreement, its factual basis reads like a carbon copy of the Rapp Declaration. For example, both the plea agreement -- to which Mr. al-Marri also allocuted in open Court -- and the Declaration provide that Mr. Al-Marri agreed with Khalid Sheikh Mohammed to assist al Qaeda operations in the United States. Plea Agreement and Stipulation of Facts at ¶ 20, United States of America v. Ali Saleh Kahlah Al-Marri, No. 09-CR-10030 (Apr. 30, 2009) (attached herein as Exhibit E); Rapp Decl. ¶¶ 8, 12-13. Both the plea agreement and the Declaration state that Mr. Al-Marri received money from Mustafa al Hawsawi to buy items in support of al Qaeda, including a laptop computer. Plea Agreement ¶ 20; Rapp Decl. ¶ 15. The plea agreement and the Declaration similarly explain how Mr. Al-Marri communicated with Khalid Sheikh Mohammed through various e-mail accounts and how he attempted to call al Hawsawi. Plea Agreement ¶ 20; Rapp Decl. ¶¶ 19-24, 28-30. The two documents also relate that Mr. Al-Marri utilized his computer to conduct research on the various uses of cyanide substances and sulfuric acid, and that the use of such materials to create cyanide gasses had been taught in the terrorist training camps where Mr. Al-Marri had trained. Plea Agreement ¶ 20; Rapp Decl. ¶¶ 10; 17-18. In sum, the near identical set of facts that served as the basis for his prior official detention as an "enemy combatant" and for his pretrial detention and plea of guilty establish beyond a doubt that Mr. Al-Marri's military detention was the result of the very same offense for which he was detained pending trial, to which he has pled guilty and for which he will soon be sentenced. Accordingly, the BoP should award Mr. Al-Marri credit for the 68 months and 4 days that he spent in military detention as an "enemy combatant."

Furthermore, and significantly, in two recent cases in which individuals were detained by the U.S. military prior to their indictment, the BoP, or the military itself, credited defendants for time that they had served in military custody. Most relevant, in United States v. John Walker Lindh, the BoP awarded defendant Lindh credit for the two months that he had spent in U.S. military custody in connection with the offenses for which he was sentenced. 227 F. Supp. 2d 565, 572 (E.D.Va. 2002). Similarly instructive, although not a BoP determination, is United States v. Hamdan, in which a military judge awarded defendant Hamdan credit of 61 months, 8 days toward his sentence for providing material support to al Qaeda based upon his confinement at the U.S. Naval Base at Guantánamo Bay, Cuba, including time that he was deemed an "enemy combatant" and not a criminal defendant in a military court. See United States v. Hamdan, Government Motion for Reconsideration (Corrected), 2-3, Sept. 24, 2008 (attached herein as Exhibit F); United States v. Hamdan, P-009, Defense Opposition to Prosecution's Motion for

GIBBONS P.C.

Reconsideration, 1-2, Oct. 10, 2008 (attached herein as Exhibit G).[2]  Thereafter, the military commission denied the government's motions to reconsider its decision to grant credit for detention served before trial and deliberate again on the sentence.  United States v. Hamdan, P-009, Ruling On Motion For Reconsideration And Sentencing, Oct. 29, 2008 (attached herein as Exhibit H).

Mr. Al-Marri respectfully submits that these determinations  -- particularly the determination in Lindh -- provide ample support for his position that the BoP must grant him credit for all of the time that he spent in military detention as an "enemy combatant."  Indeed, denial of such credit to a similarly-situated prisoner constitutes an arbitrary and capricious action because "an agency may not treat like cases differently," Eagle Broad. Group Ltd. Group v. FCC, 563 F.3d 543; 2009 U.S. App. LEXIS 9828, at *23 (D.C. Cir. 2009) (internal quotation marks and citation omitted), and may also amount to arbitrary discrimination in violation of the Fifth Amendment.  See, e.g., Jonah R. v. Carmona, 446 F.3d 1000, 1008 (9th Cir. 2006) (citations omitted) (finding that BoP's refusal to grant juvenile credit for pre-sentence custody raises equal protection concerns).  Additionally, no deference would likely be afforded a BoP determination not to provide credit for Mr. Al-Marri's military detention because it would appear to contradict the agency's own previous construction of 18 U.S.C. § 3585(b) in Lindh, 227 F. Supp. 2d at 572.  See Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 356 (2000) (holding deference not owed to agency's interpretation of regulation that conflicts with its prior interpretation); see also Eagle Broad. Group Ltd. Group, 2009 U.S. App. LEXIS 9828, at *23 ("[A]n agency's unexplained departure from precedent must be overturned as arbitrary and capricious.") (internal quotation marks and citation omitted).

We look forward to hearing from you concerning the BoP's position concerning the computation of credit for Mr. Al-Marri's prior custody.  Should you have any questions about, or require any clarification regarding, our contentions and these materials, please do not hesitate to call me, either in my office at (973) 596-4731 or on my cell phone at (201) 407-4765.

Thank you for your kind consideration of this matter.

Sincerely yours,
s/Lawrence S. Lustberg

Lawrence S. Lustberg

LSL/leo

---

[2] Other military commission documents concerning the sentence and credit for detention, including a transcript of these referenced proceedings, are not as of yet available on the Department of Defense website.

GIBBONS P.C.

cc:     Ali Al-Marri
        Andrew J. Savage, III, Esq.
        L. Lee Smith, Esq.
        Mark A. Berman, Esq.
        Jonathan L. Hafetz, Esq.
        Sharon Lever, Esq.
        Joanna Baltes, Esq.

# Exhibit E



**U.S. Department of Justice**

Federal Bureau of Prisons

_Washington, D.C. 20534_
July 8, 2009

Gibbons P.C.
Attn: Lawrence S. Lustberg
One Gateway Center
Newark, New Jersey 07102-5310

Re:  <u>U.S. v. Al-Marri</u>, 09-CR-10030, C.D.Ill. - Request for Prior
     Custody Credit Analysis

Dear Mr. Lustberg:

Your correspondence to the Director, Federal Bureau of Prisons
(Bureau), in the above-styled case was referred to me for a
response.  You request the Bureau provide you an analysis of the
prior custody credit implications in that case.

The government's position regarding prior custody credit
in your client's case will be presented by the prosecutor at the
appropriate time.

Sincerely,

s/Paul W. Layer

Paul W. Layer
Associate General Counsel

cc:  Joanna Baltes
     Department of Justice
     Counterterrorism Section
     950 Pennsylvania Ave. NW
     Washington, DC 20530