E-FILED
Wednesday, 09 September, 2009  02:37:53 PM
Clerk, U.S. District Court, ILCD

```
1               IN THE UNITED STATES DISTRICT COURT
                FOR THE CENTRAL DISTRICT OF ILLINOIS
2


3


4


5   UNITED STATES OF AMERICA,          )
                                       )
6                     Plaintiff,       ) Criminal No.
                                       ) 09-10030
7           vs.                        ) Peoria, Illinois
                                       )
8   ALI SALEH KAHLAH AL-MARRI,         )
                                       )
9                     Defendant.       )


10


11


12               TRANSCRIPT OF PROCEEDINGS
                    September 3, 2009


13


14


15                    BEFORE:


16           HONORABLE MICHAEL M. MIHM
               United States District Judge


17


18


19


20


21


22


23


24


25
```

1                          APPEARANCES:

2


3                     DAVID E. RISLEY, ESQ.
                  Assistant United States Attorney
4                      318 S. Sixth Street
                    Springfield, Illinois  62701
5
                           -- and --
6
                       MS. SHARON LEVER
7                   U.S. Department of Justice
                     Counterterrorism Section
8                   950 Pennsylvania Avenue NW
                     Washington, DC  20530
9             (Appeared on Behalf of the Government)


10
                      L. LEE SMITH, ESQ.
11                    Hinshaw & Culbertson
                   416 Main Street, Suite 600
12                   Peoria, Illinois  61602

13                         -- and --

14                 ANDREW J. SAVAGE III, ESQ.
                     Savage & Savage, P.A.
15                     15 Prioleau Street
                 Charleston, South Carolina  29401
16
                           -- and --
17
                   LAWRENCE S. LUSTBERG, ESQ.
18                       Gibbons PC
                     One Gateway Center
19                 Newark, New Jersey  07204
              (Appeared on Behalf of the Defendant)
20

21

22


23                   Karen S. Hanna, C.S.R.
                  U.S. District Court Reporter
24                  Central District of Illinois
         Proceedings recorded by mechanical stenography, transcript
25       produced by computer

1          THE COURT:  Good morning.  This is the case of

2    the United States of America vs. Ali Saleh Kahlah

3    Al-Marri, criminal number 09-10030.  The defendant is in

4    court represented by his attorneys, Lee Smith, Andrew

5    Savage and Lawrence Lustberg.  The United States is

6    represented by David Risley and Sharon Lever.

7          The matter is set today for a hearing on various

8    matters.  I wanted to take a moment at the beginning and

9    kind of walk through what's happened since the last court

10   hearing.

11         The last court hearing occurred on July 24 and

12   following that, based on the guidelines set by the Court,

13   on July 30 the Government filed its written response to

14   the defendant's discovery request.

15         Then on August 11 the Court received the first

16   batch of classified documents along with a request for a

17   protective order.  I reviewed those documents, reviewed

18   them carefully, and my review led me to certain questions

19   and a need to clarify certain issues.

20         So then on the 13th of August, pursuant to CIPA

21   Section 4, the Court held an ex-parte phone call with

22   counsel for the Government.  During that phone call, the

23   Court asked the questions that I wanted to ask.  I

24   received answers for those questions.  I also made

25   recommendations concerning the supplementation of certain

summaries that the Government was proposing be provided to

defense counsel.  I think there were 14 in all.  I could

be wrong, but I think 14.  Each of those recommendations

was ultimately approved and included in the unclassified

summaries that were provided.  The Court -- I received

word that that was going to happen the same day, so the

Court entered the protective order that day on the 13th of

August and the unclassified summaries were provided to the

defense, I believe, the same day.

Then on August 17 the defendant filed his motion

to compel, which was basically a response to the

Government's written response that had been -- the

Government's response to the discovery request that the

Government had filed on July 30.

Then on August 28 the Court received the second

batch of classified documents and a video of an

interrogation.  I think that was on a Friday.  I received

it on late Friday.  The Court viewed and read all of the

material on Monday.

On Tuesday of this week I had an ex-parte phone

conference with counsel for the Government.  During the

call, the Court again had questions that I posed.  I did

receive answers to those questions.  I also made

recommendations concerning the supplementation or

clarification of certain items and, unfortunately, I still

1     don't have a response to that.  So there are some matters

2     that are still hanging concerning the second batch of

3     classified information.  Can I reasonably expect that

4     there will be a response say early next week sometime at

5     the latest?

6              MS. LEVER:  Yes, Your Honor.  We are working

7     with the agency involved and we believe we have an

8     agreement.  We just need final approval and we will

9     attempt to get that to you first thing next week.

10             THE COURT:  Thank you.  Well, obviously I'm not

11    happy about the fact that I'm going into this hearing

12    without knowing that and, as I understand it, there was

13    some effort, according to the representations made by

14    Government counsel, that there was some effort to try to

15    resolve some of these issues that apparently didn't

16    succeed, but it's unfortunate that I don't have the

17    responses today so that I could more fully address all of

18    the arguments.  But, anyway, that's where we are.

19             In the defendant's motion to compel -- well,

20    before I get to that, let me ask one other thing.  Let me

21    ask counsel for the Government.  What discovery has been

22    provided to the defense since our last hearing?  I know

23    that the summaries, these 14 summaries, were submitted.

24    There was also a reference to some -- some suggestion of

25    other material that was handed over, but I don't

1   understand what it was.  Could someone clarify that for

2   me?

3                MR. RISLEY:  Your Honor, I can address the

4   unclassified side of things.  Since the time -- I believe

5   it was since the time we last met, Mr. Savage and some of

6   his staff came to our office and have viewed all of the

7   physical items of evidence that we had that were deemed

8   relevant to either side in the sentencing hearing or for

9   that matter that we had stored there for purposes of the

10  trial had the case gone to trial.  So that's happened.

11  That included -- well, that included an examination,

12  without looking at the contents, of electronic disks that

13  were seized at the time of the search of the defendant's

14  apartment and the seizure of his computer, things of that

15  sort.  So on the unclassified side of things, those things

16  have happened to make sure we haven't left any stone

17  unturned.  On the classified side, Ms. Baltes handled that

18  and I'll let Sharon Lever address that side of things.

19                THE COURT:  Thank you.

20                MS. LEVER:  Your Honor, there are still some

21  items that are outstanding.  We have had some technical

22  difficulties obtaining certain information that we are

23  trying to provide to the defense.  We are working with the

24  Department of Defense to try to resolve those technical

25  difficulties.  In the event we're not able to provide the

1    electronic copy that we are seeking to provide,

2    instructions are being given that people need to get in

3    front of a copy machine and start copying paper.  So we

4    are hoping to have that resolved in the next week.

5            THE COURT:  Well, I appreciate that information,

6    but my question is what classified information has been

7    turned over in addition to the 14 summaries.

8            MS. LEVER:  Your Honor, no classified

9    information has been turned over.  Only the 14 summaries.

10           THE COURT:  Well, there was some reference

11   somewhere to a very large number of documents, perhaps in

12   the --

13           MS. LEVER:  That's the documents, Your Honor,

14   that I was referring to that we have had technical

15   difficulty in terms of getting it downloaded

16   electronically, which is I think how everybody preferred

17   to provide the information.

18           THE COURT:  Then there was also a reference to

19   like 600 pages of something, whether those were

20   representative pages, sample pages or --

21           MS. LEVER:  Those have been turned over to the

22   defense, Your Honor, and they were representative of the

23   documents that were contained in the larger number of

24   documents and what we had requested was that we receive

25   information relative to what further documentation they

1 would want and then we discovered this technical, this

2 electronic database, and I think we were going to try to

3 provide that which would have covered everything, but we

4 have run into problems as I said.

5          THE COURT:  And you're telling me that that

6 problem will be resolved by next week?

7          MS. LEVER:  We are attempting to resolve it,

8 Your Honor.  I have had conversations with defense counsel

9 about what specific documents they want and if we are

10 unable to resolve the electronic database, we will make

11 physical copies of those.

12          THE COURT:  Well, if it comes down to that, then

13 I expect that that will be given a high priority and that

14 the copies will be made expeditiously.  The Department of

15 Defense has to give this a high priority.

16          MS. LEVER:  Yes, Your Honor.  We will repeat

17 that to them.

18          THE COURT:  All right.  Before I go any further

19 then, let me turn to defense counsel and ask you if

20 there's anything you would like to add or differ with

21 concerning the status of the materials that you have

22 received or not received.

23          MR. LUSTBERG:  Well, Judge, obviously we have

24 our application, which I know that's not what we're

25 dealing with right at this moment, but let's just say

1     this.  You know, the discovery that Mr. Risley referred to

2     was part of the original discovery, for lack of a better

3     word, regarding the merits of the case.  The discovery I

4     think we're here talking about today and I think the Court

5     is inquiring about is the discovery that we requested in

6     connection with sentencing.

7             We have received some documents including

8     disciplinary reports and some other documents.  That's the

9     600 pages that the Court referred to earlier.  The large

10    volume of documents that Your Honor was asking about, we

11    understand these technical difficulties that have been

12    going on for really quite some time and because it's a

13    large volume of documents and because let's -- we want the

14    Court to be clear that we do not want this sentencing

15    adjourned.  We want to get our hands on those documents as

16    quickly as possible so that we can keep to the sentencing

17    date the Court has set.  Mr. Al-Marri very much wants to

18    proceed on that date.  So we're really looking forward to

19    getting those documents as soon as possible and those are

20    important documents.

21            There are a couple of other issues and I don't

22    know whether Your Honor wants to address those now

23    regarding discovery.  One is that we had in our original

24    discovery request asked for videos that were made of

25    Mr. Al-Marri while at the brig in particular, although

1  maybe at Pekin as well, that would document the conditions

2  under which he was confined.  In particular, there were

3  cameras in his cell, in the day room, and at times hand

4  held cameras that essentially recorded his every move.

5  Obviously these videos are voluminous.  There are many.

6  We have had some conversations with the Government about

7  getting those videos so that we could view them and --

8              THE COURT:  What is the status of that?

9              MR. LUSTBERG:  The Government requested that we

10  itemize -- that we itemize which specific videos that we

11  wanted.  We responded that we really were unable to do

12  that and we really wanted to have access to all of them.

13  I believe --

14              THE COURT:  But as I understand it, what you're

15  saying is you wanted a video or videos that would

16  accurately portray, for example, what his cell was like at

17  the brig.

18              MR. LUSTBERG:  Well, actually it would of course

19  have that effect, but really what we're -- let me lay it

20  out for the Court so there's no mystery as to exactly what

21  it is we were wishing to show through those videos.

22              The videos from his early days, in particular at

23  the brig, would we believe document the very harsh

24  conditions under which he was held.  The videos, by

25  contrast, towards the ends of the time at the brig would

1    show the relatively better conditions in which he existed,

2    in particular the relatively greater freedom that he had,

3    something that we never disputed, but which we will argue

4    to Your Honor at sentencing shows the transformation such

5    that the Government authorities there at the brig actually

6    came to trust him and view him as not a dangerous inmate.

7    So it's important for us to view those videos so that we

8    can make precisely those arguments.  I spoke to Ms. Lever

9    about that this morning.  We are attempting to work out a

10   protocol whereby perhaps Mr. Savage can view those videos.

11              THE COURT:  Well, first of all, do those videos

12   exist?

13              MS. LEVER:  Yes, they do, Your Honor.

14              THE COURT:  Thank you.  Go ahead.

15              MR. LUSTBERG:  So we are attempting to work out

16   a protocol with the Government whereby perhaps Mr. Savage

17   can view them at the brig if that's where they are.

18   Ideally and it is our position that Mr. Al-Marri should

19   have access to those videos so he can view them and assist

20   us because the truth is he was there and he is the most

21   valuable witness who can explain to us exactly what we're

22   watching, so our request has always been to have those

23   videos produced to Mr. Al-Marri or to us here so that we

24   can review them with him.  But that's an outstanding issue

25   as well.

1          THE COURT:  Well, what needs to be done to

2    resolve that?

3          MS. LEVER:  Your Honor, there are thousands of

4    hours of videotape.  All we asked was for somebody to give

5    us some time frames so that we could review the

6    videotapes, especially during the parts of the

7    confinement, to determine that there were no classified

8    matters which existed on the tapes and then after that we

9    were not going to have an issue with turning them over,

10   but we can't go through thousands and thousands and

11   thousands of hours.

12         THE COURT:  Are they dated?

13         MS. LEVER:  Yes, they are.

14         THE COURT:  Why can't you pick a couple in the

15   first 30 days and then say six months later, a year later,

16   then all the way down the line, just have a couple of

17   representative samples?

18         MS. LEVER:  We asked the defense to do that,

19   Your Honor, and that's what we --

20         THE COURT:  Well, you don't have a response back

21   from them yet?

22         MS. LEVER:  Mr. Lustberg and I discussed that

23   this morning as to what the best way to handle it would

24   be.

25         THE COURT:  That doesn't mean they have to go

1    through all these things.  They could just select some at

2    random from various time periods.  Would that be agreeable

3    with you --

4              MR. LUSTBERG:  I'm going to let Mr. Savage --

5              THE COURT:  -- at least to begin with?

6              MR. SAVAGE:  Good morning, Judge.  Andy Savage,

7    Your Honor.  Thank you.  Your Honor, we received those

8    summaries that you had approved a week or two ago and

9    recollection of those summaries would indicate that there

10   were behavioral and compliance problems on the part of

11   Mr. Al-Marri.  What we are seeking in those videos is the

12   reason, the underlying cause of those non-compliance

13   problems.  For example, the environmental factors when

14   Mr. Al-Marri was first housed there, a lack of daylight

15   for the first nine months or year, the constant awakening

16   of him and interrupting of his sleep, the placement of

17   devices by his cell which would disrupt his --

18             THE COURT:  I understand why you want them.  My

19   question is what I've suggested here, is that agreeable to

20   you as a place to start so we can get this thing moving?

21             MR. SAVAGE:  I think it is.  What I think -- I

22   have not had an opportunity to speak to our client.

23   Mr. Lustberg and the Government's representative met this

24   morning and I believe if we could go out and randomly

25   select arbitrary dates within certain time parameters and

1   look at those to see if it -- the brig has been very

2   helpful to us and I believe that brig representatives can

3   direct us in the same sense that Mr. Al-Marri could if he

4   had been there in finding these specific clips of video

5   that I think would be helpful to the Court.

6           THE COURT:  Well, I want counsel to confer

7   further about this after the hearing today and whatever is

8   going to be done, I want you to agree to it, the process

9   and the substance of what's going to occur, within the

10  next seven days.  If you can't do that, then you bring the

11  dispute to me and I'll resolve it.

12          MR. SAVAGE:  Thank you, Your Honor.

13          MS. LEVER:  Thank you, Your Honor.

14          THE COURT:  All right.  Now do you have any

15  other comments about --

16          MR. LUSTBERG:  The only other thing that I just

17  wanted the Court to be aware of is that there has been an

18  ongoing -- we have had certain requests for interviews of

19  Government personnel.  I have discussed that as well with

20  Ms. Lever today and I believe we are in the process of

21  working out a means for us to have access to those

22  personnel that we wish to interview.  Candidly, Judge,

23  there are certain personnel from the brig we were

24  considering calling as witnesses at the sentencing

25  hearing.  It may be that for reasons of their convenience

1    and otherwise, we may choose to do that some other way,

2    whether by video or by letter or whatever.  But I'm

3    confident that that's the sort of thing that we'll be able

4    to work out with the Government.  We will keep the Court

5    apprised.  Again, if there are any disputes, we will bring

6    them to the Court's attention.  At this moment I think

7    we're on the road to resolving that in an amicable way,

8    but I did want the Court to be aware of that.

9           THE COURT:  That's great and I certainly

10   encourage working things out, but I would just say sooner

11   rather than later so if there's a dispute I can resolve it

12   and the resolution of it will leave enough time to do

13   whatever the Court directs so that we can --

14          MR. LUSTBERG:  In that connection, Your Honor,

15   we're very well aware our sentencing memorandum is due to

16   the Court on October 16, so it's our intention to have all

17   of our materials assembled by then and we're working

18   toward that date and I know the Government is.

19          THE COURT:  While we're talking about the

20   sentencing date, the sentencing has been scheduled for

21   10-29 and 10-30, which is a Thursday and Friday.  It

22   occurred to us that it would be better not to have the

23   second day on a Friday and, as I understand it, my

24   secretary has been in touch with all of you and everyone

25   has agreed to change the dates to the 28th and 29th, which

1    would be a Wednesday and Thursday.  Is that correct?

2              MR. LUSTBERG:  Yes, Your Honor.

3              THE COURT:  All right.  Well, it seems to me in

4    terms of what we're going to do from this moment on this

5    morning then is, first of all, there is -- in your motion

6    to compel, first of all, you're asking me to reconsider

7    the ruling that I made when I entered the first protective

8    order and I would like to give you an opportunity now to

9    argue that matter orally.

10             MR. LUSTBERG:  Thank you, Your Honor.  I

11   appreciate that.  Obviously, just to back up a bit, when

12   Your Honor first set the schedule for how this was all

13   going to proceed, I'm not sure any of us contemplated that

14   in the middle of it would be this ex-parte process whereby

15   the Government would seek a protective order.

16             THE COURT:  Well, that surprised me a little

17   bit, but it's clearly contemplated in the law.  Let me

18   finish.  And I can't speak for other judges, but usually

19   when I do something like that in camera, I always have

20   questions and I need to have those questions answered.  Go

21   ahead.

22             MR. LUSTBERG:  I appreciate that.  So when we

23   initially crafted this motion, it was not designed to be a

24   motion for reconsideration.  It was our response, as Your

25   Honor had directed, to the Government's discovery

 1 | response.

 2 | THE COURT:  Sure.

 3 | MR. LUSTBERG:  The summaries that we have

 4 | received, of course we have no way of knowing how those

 5 | compare to the underlying classified documents.  Only this

 6 | Court has -- well, the Government, but of course Your

 7 | Honor has seen both and has been able to view them.  We

 8 | have no way of knowing that.  What we have in front of us,

 9 | however, is a set of documents that are troubling to us in

10 | their vagueness.  I'm going to point the Court to certain

11 | examples in that regard, but --

12 | THE COURT:  Hold on just a minute.  Go ahead.

13 | MR. LUSTBERG:  Obviously I think we're all on

14 | the same page in terms of understanding why it is that the

15 | defense has sought these documents.  I don't think that

16 | the Court's ruling in any -- and I don't know, but I don't

17 | think the Court's ruling based upon the order was in any

18 | manner a criticism of why it is that we need these

19 | documents and want these documents in the first place.

20 | The question is do they get us there.

21 | When I say do they get us there, the standard

22 | under CIPA which Your Honor was attempting to apply was

23 | that the Court needed to find -- I'm reading from CIPA

24 | Section 6 C, Section 6(c)(1).  It says that the Court can

25 | grant a summary of this sort if it will provide the

1  defendant with substantially the same ability to make his

2  defense as would the disclosure of the specific classified

3  information.

4          As we review these documents, we have serious

5  doubts about that, some of which or most of which I

6  pointed out to the Court in our motion and I won't belabor

7  those here.  Again, we have no way of knowing how

8  accurately they capture what it is that was actually on

9  the underlying documents, but let me point the Court to a

10 couple of examples.

11         In the very first one, which is from a document

12 dated September 15, 2003, it discusses that the guards

13 observed Mr. Al-Marri, quote, "noticeably shaken" by what

14 the interrogator had told him.  It doesn't, however, say

15 what it was that the interrogator told him.  And since

16 what our -- what we intend to show at sentencing is the

17 way he was treated more than his response, that's critical

18 information that to us is lacking from that document.

19         Again, I'm repeating myself, but we obviously

20 don't know what was in the original underlying document.

21 But it strikes me that the way he was treated, that's the

22 crux of what we need with respect to that particular

23 document.

24         THE COURT:  Of course your request presumes that

25 the answer to that question is in the document.

1            MR. LUSTBERG:  We have no idea.

2            THE COURT:  Right.  I understand.

3            MR. LUSTBERG:  Similarly, there's a -- these are

4    just examples.  We pointed out almost all of them in our

5    submission to the Court.  But if you look at the document

6    dated February 6, 2004, it ends with the following

7    statement:  "The agent has been with Mr. Al-Marri through

8    15 prolonged sessions, many lasting ten hours or more."

9    It may be that that's all that was in that document, but

10   if there were 15 prolonged sessions, many lasting ten

11   hours or more, one would expect that there would be some

12   description of at least some of those sessions and that

13   obviously is exactly the sort of information we have been

14   requesting.

15            I should say that one of the reasons that we

16   requested video, as Mr. Savage has pointed out, is so that

17   we can test the truthfulness of some of these

18   representations of what occurred or the completeness of

19   the story that's told by these summaries because some of

20   them disparage Mr. Al-Marri, which we think is certainly

21   explainable by the facts that occurred and some of them,

22   by Mr. Al-Marri's account, are simply false, but that's --

23   but it's important for us in order to be able to do that

24   to have as complete a version of what occurred on each of

25   those dates as is possible and, respectfully, these

1     summaries just leave us at sea.

2              Again, we don't know whether every relevant

3     factor is in there.  We trust that the Court has done its

4     best to provide us with what Your Honor thought we needed,

5     but I thought it would be helpful to Your Honor if we

6     explained what it is we were after so that the Court

7     could, if it needed to, revisit it and assure that we were

8     in fact getting everything we wanted.

9              In Your Honor's order, you reference Brady and

10    so forth and this really isn't Brady that we're talking

11    about here.  This is -- these are documents that we

12    require in order to make our defense as it were in

13    connection with sentencing as a matter of constitutional

14    due process, which of course has to be balanced against

15    national security issues.

16             And let me just comment just a bit on that.

17    Some number of years ago, I received security clearance.

18    In order to get that security clearance, all my friends,

19    my neighbors, my co-workers, my family were interviewed

20    and asked about me.  I was asked tons of questions.  It

21    was very difficult to do, recount every single address I

22    had ever lived at, so forth, as a result of which I

23    received security clearance.  Some people were amazed, but

24    that's what happened.  I'm not sure that they thought the

25    country was a safer place for it, but so be it.

1            The point is though that my understanding is

2     that I received security clearance, as Your Honor's staff

3     did for example and so forth, specifically for the purpose

4     of being able to view classified documents.  To the extent

5     that they are classified and should not be made public,

6     there certainly are ways of dealing with this.  There are

7     means of providing documents under seal.  There's means of

8     going through court security officers to assure that

9     things are kept in a safe and secure place.  There's means

10    of arguing in ways that don't make it into the public.

11    But I understood that we received security clearance

12    specifically so that we could view these documents and

13    make appropriate arguments in an appropriate form from

14    them.

15            It strikes me as odd that after all that, we're

16    being deprived of the opportunity to view these classified

17    documents notwithstanding that clearance and

18    notwithstanding the need, which the parties I think all

19    agree on and which the Court seems to agree of the

20    importance of these documents for our sentencing

21    presentation.

22            That of course applies with equal, if not

23    greater, force to the video that the Court looked at the

24    other day, parts of which by the way have already made it

25    into the public's eyes.  As Your Honor may know, there was

1    a New York Times article that I think discussed that very

2    same episode.

3            But the bottom line is that it strikes me that

4    as the Court goes about the process of trying to balance

5    national security concerns on the one hand with the

6    defendant's due process rights on the other, that making

7    these documents available to counsel who have security

8    clearance is an appropriate way of doing that so that we

9    can respectfully assess for ourselves whether the

10   summaries are in fact adequate for our sentencing

11   purposes.

12           So that's the application that we have made with

13   respect to that set of documents.  And the others, I can,

14   if Your Honor wants, go through in more detail what I see

15   as the incompleteness of those documents, but it's in my

16   papers and I don't think it's --

17           THE COURT:  Well, if you have anything else you

18   would like to say orally at this point, do that and then

19   I'll give the Government a chance to respond.

20           MR. LUSTBERG:  Let me just mention one more only

21   because to me it was a particularly important one and it

22   will come up again a little bit later, which is in a

23   document -- in the page that describes the document dated

24   January 19, 2004, there is a discussion about threats to

25   Mr. Al-Marri's family in the event he did not cooperate

1    with the authorities.  We now know as a result of recent

2    disclosures by the Government that that was essentially a

3    part of the interrogation techniques.  And we'll talk a

4    little bit more about interrogation techniques later, but

5    those specific threats, it strikes me, are exactly the

6    kind of thing that we ought to be apprised of because it

7    is such a fundamental part of --

8              THE COURT:  That's what the summary does,

9    doesn't it?

10             MR. LUSTBERG:  Respectfully, I don't think the

11   summary -- I mean, I don't know because I don't know

12   what's in the underlying document, but it's vague as to,

13   in my view, as to what those threats are and if there's

14   more in the underlying document that describes

15   specifically what the threats were --

16             THE COURT:  I'm not sure how vague it is.  It

17   says, some of the wording there on line 3, as to if there

18   was not cooperation, what would happen.  It doesn't seem

19   very vague to me.

20             MR. LUSTBERG:  Well, in the second paragraph it

21   talks about was he ready to talk or allow his family in

22   Saudi Arabia and Qatar to suffer the consequences of the

23   refusal.  It's those consequences that I was really

24   referring to that are not spelled out in the summary,

25   whether or not it is in the underlying document.

1          But we have listed for Your Honor in our motion

2     some of the other issues.  Another one that I recall is

3     there's a discussion of the fact Mr. Al-Marri had not seen

4     some light for some time and we wanted to know more

5     specifics about when he was -- when that commenced.  But

6     as a general matter, I think we have laid it out.  Again,

7     our view is that as cleared counsel we ought to have the

8     opportunity as counsel to see those things.

9          Mr. Savage correctly points out, it bears noting

10    here that at least Mr. Savage and I had security clearance

11    some time ago in connection with Mr. Al-Marri's habeas

12    petition.  Then by that time it was in the District of

13    South Carolina.  As cleared counsel we were permitted to

14    see certain classified documents and we handled those

15    appropriately, always pursuant to the rules.  We filed

16    documents in a manner that was permitted by the relevant

17    statutes, including CIPA.  I don't think there's any doubt

18    about our trustworthiness in terms of fulfilling our

19    duties as cleared counsel and I just am at a loss to

20    understand why we could view classified documents and do

21    it so responsibly in a case like that and somehow we're

22    not permitted to do so here where our client's sentence is

23    ultimately at stake.

24          I will -- I think if Your Honor wants -- I mean,

25    I have the other points in our motion to address.  I can

1    do that after if you want to take them one at a time.

2                    THE COURT:   Okay.   Let me hear what the response

3    is.

4                    MS. LEVER:   Your Honor, obviously the Government

5    is constrained by the fact that the information at hand is

6    in effect classified.   And before I address specific

7    points raised by Mr. Lustberg, I would let the Court know

8    that the Government stands by its CIPA Section 4 motions,

9    the accompanying declaration, this Court's very thorough

10   review of the material, the Court's suggestions which

11   ultimately determined what the Government summaries would

12   look like and the Court's order allowing the Government to

13   produce summaries in lieu of the classified discovery.

14                   I would point out, Your Honor, that the standard

15   cited by the defense is the standard under CIPA Section 6

16   which contemplates a very different proceeding to CIPA

17   Section 4.   CIPA Section 6 actually has to do with the

18   defense's request to use classified information in a court

19   hearing and so, therefore, the standards are different and

20   the Courts over time have treated them as different.

21                   The standard under CIPA Section 4 is either

22   Brady or whether the information would be relevant and

23   helpful to the defense and not necessarily by the

24   defense's assertion of what is relevant and helpful, but

25   also taking into consideration the national security

1  implications of the case.

2         The Government understands that both Mr. Savage

3  and Mr. Lustberg have security clearances and the fact

4  that certain classified information is not available, made

5  available to certain people, has more to do with the

6  national security implications of the information than the

7  trustworthiness of the defense.  And certainly the

8  Government's arguments are not that the defense could not

9  handle the classified information, but in this context, in

10  the specific context of the information that we have

11  sought to delete from discovery, that in the terms of

12  classified information they do not have a need to know

13  and, therefore, that information is not being made

14  available to them and this Court has made that

15  determination.  Your Honor --

16         THE COURT:  Well, it certainly is fair to say,

17  based on what I've seen and read here, that based on their

18  arguments concerning why they want the information that it

19  is at least marginally relevant to the issue of

20  sentencing, more or less, depending on the item involved.

21  The other part of the equation is whether it's helpful or

22  not.

23         The one sticking point that I have here has to

24  do with the access by counsel to the information.  Again,

25  this type of proceeding is different from other kinds of

1    cases that I deal with.  Very often, most often, in other

2    kinds of cases when the Court conducts an in camera review

3    of documents, if I determine that there is at least

4    marginal relevance, that I would commonly allow counsel to

5    see the information even if they were directed not to

6    share it with their client.  As I understand it, what

7    you're saying, the fact we're talking about classified

8    information to begin with makes this a different situation

9    concerning the other part of the equation in terms of

10   what's helpful.  Is that correct?

11            MS. LEVER:  That's correct, Your Honor.  Your

12   Honor, again obviously I can't address the specific points

13   raised by Mr. Lustberg due to the classified nature of the

14   documents, but again I would assure the Court and I would

15   assure the defense that the Government is working

16   extremely hard to provide the information that we can

17   provide to the defense.  We understand what the defense

18   argument is going to be and we are mindful about discovery

19   obligations and are working towards those issues.

20            As we discussed in our hearing the other day,

21   Your Honor, there are certain things that Your Honor is

22   requiring us to do which we are in the process of trying

23   to ensure will be done and we had hoped to have it by

24   today, but unfortunately did not.  Unless Your Honor has

25   any other questions, I'm not sure there is anything else I

1  | can say.

2  |        THE COURT:  Not at this point.  As I indicated

3  | at the beginning, there are issues pending right now

4  | concerning the second batch of documents, but I would be

5  | very happy to hear any additional comments you have from

6  | either side on the video interrogation and also there's a

7  | request pending that defense be given access to all

8  | information concerning the destruction of documents and I

9  | would be happy to hear any additional comments you have.

10 | Why don't we start with Mr. Lustberg.

11 |        MR. LUSTBERG:  Thank you, Your Honor.  First,

12 | obviously with respect to the videotape itself, we don't

13 | know much about it.  There's a newspaper article about it

14 | and we don't have the summary, so we can't do the kind of

15 | -- I can't give you the kinds of comments I could with

16 | respect to the previous summaries.  I also understand

17 | there may be other summaries presumably, but who knows.

18 | We may have some of the same sorts of concerns, but it's

19 | impossible to say at this point.

20 |        I would just say this though about the video.

21 | If, as I believe, based upon conversations I had with

22 | Ms. Baltes particularly before today, that the concern

23 | with respect to showing at least counsel the underlying

24 | video is that it will somehow reveal the identity of the

25 | interrogators, let me reiterate my statements before that

1   we can be trusted not to reveal those things in any kind

2   of public forum or any kind of public document if that is

3   the only real concern with respect to the classified

4   information on those videos.  And I know that the

5   Government -- I know this because I -- and I trust they

6   did this.  They attempted to consider other solutions to

7   that in terms of somehow masking the identity of the

8   interrogators which I understand is classified

9   information.  But even if that can't be done for purposes

10  of technology, that is technologically there's no way of

11  obscuring their faces or concealing their identities, even

12  if that can't technically be done, this video is a

13  critical part of what's already in the public record about

14  this case and, from what we understand, is extremely

15  important in terms of arguments we will make regarding how

16  Mr. Al-Marri was treated and interrogated.  A summary

17  really, as detailed as it may be, and we hope it's very

18  detailed, will not have the impact and will not nearly be

19  as descriptive as a video itself.  I mean --

20          THE COURT:  But in any event, based on the

21  classified status of it, that's not something that's going

22  to be played in open court.

23          MR. LUSTBERG:  Of course not.  Of course not.

24  And the Court has seen it already I take it.

25          THE COURT:  I have.

1        MR. LUSTBERG:  So perhaps Your Honor, as the

2   sentencing judge, will adequately consider it just having

3   seen it, but it certainly prevents us from making perhaps

4   the quality of arguments that we could to Your Honor at

5   sentencing without again the ability to see it.  And if

6   the only issue is the question of the identity of the

7   interrogators, that is something that can obviously be

8   briefed, discussed.  That is, the interrogation itself is

9   something that can be briefed and discussed without in any

10  way comprising that identity.  By the way, of course

11  Mr. Al-Marri knows who his interrogators were, so it's

12  not -- actually it's the one thing about this that's not

13  particularly secret in any event.  But be that as it may,

14  that is a critical piece of evidence in this case and it's

15  one that we most respectfully urge the Court to allow us

16  to view as counsel with security clearance in this matter.

17        We had two other points to our brief and I want

18  to just briefly mention those.  One was the issue of we

19  had requested material regarding Government interrogation

20  techniques that were applied to Mr. Al-Marri.  The

21  Government declined to produce that information.  Since

22  that time, as Your Honor is probably aware, there have

23  been reports in the public domain that have been released

24  regarding Government interrogation techniques, although I

25  believe that those are not -- those were CIA techniques

1    and not necessarily pertinent to Mr. Al-Marri, although it

2    may be that his -- we're a little unclear -- it may be

3    that his name appears.  They are very heavily redacted, so

4    it's very hard to tell.  But it strikes me that the

5    particular techniques that were applied to Mr. Al-Marri is

6    the guts of what we want to argue here and it's precisely

7    certain things to the extent there's documentation

8    regarding it, apart from the summaries themselves, that we

9    ought to have access to and so we have requested -- and I

10   don't think -- we haven't seen any response to that, but

11   the Court hadn't contemplated a response to that.  That's

12   information that we would ask the Court to compel the

13   disclosure of.

14           Finally, we also -- and let me just say, we can

15   argue from the existing public record that those very same

16   techniques that are set forth in that public record and in

17   those records were applied to Mr. Al-Marri.  In some cases

18   we know they were.  But obviously a more refined approach

19   to this would be one that's specific with respect to

20   Mr. Al-Marri and perhaps other enemy combatants at the

21   consolidated naval brig in Charleston and I would think

22   that's information that the Court would benefit from

23   hearing.  I know it's information that we would like to

24   brief for the Court and include in our sentencing

25   presentation.  It's critical information and to the extent

1  that it exists, the Government ought to be required to

2  disclose it.

3           Our final area of information was we are aware

4  and the Government has confirmed that there is one

5  videotape of the many that at one time existed with regard

6  to Mr. Al-Marri's interrogation.  It is our understanding,

7  again from the public record, that there was an

8  investigation that may have been done regarding the

9  destruction of the other videotapes of Mr. Al-Marri as

10 well as others, but obviously we're only concerned with

11 Mr. Al-Marri.  We will of course argue whatever adverse

12 inferences we can from the Government's destruction of

13 this evidence, but it strikes me that a search for the

14 truth would be enhanced by actually knowing what the

15 reasons were for the destruction of those videotapes.  To

16 the extent there's documentation that sets that forth, I

17 would think that that's the kind of thing that the Court

18 would want and certainly the kind of thing that we would

19 want.  The Government claims that the destruction was done

20 in good faith and as a matter of routine, but that's a

21 statement that we're entitled to test in the adversarial

22 process and to the extent there is documents that bear

23 upon that testing, we would most respectfully request that

24 the Court order the Government to provide them.  Other

25 than that, we rely upon the papers that we filed with

1  │ respect to all matters.

2  │          THE COURT:  Do you have any further response?

3  │          MS. LEVER:  Your Honor, since this will be

4  │ short, the Government has provided Your Honor with

5  │ declarations from the Department of Defense explaining why

6  │ this information can't be turned over and we stand on

7  │ those declarations and this Court's prior rulings.

8  │          THE COURT:  Okay.  I'm going to take about a ten

9  │ minute recess.  We'll be back in ten minutes.

10 │                    (Recess taken)

11 │          THE COURT:  That was longer than ten minutes.  I

12 │ apologize for that.  Number one, the motion to reconsider,

13 │ that is reconsider as addressing the first protective

14 │ order entered by the Court, is denied, at least at this

15 │ time.

16 │          Mr. Lustberg, you asserted that you can be

17 │ trusted and I trust you.  But in this context, the Court

18 │ feels it's the nature of the information that determines

19 │ who needs to know.  The defense need to know here is

20 │ limited to giving them the opportunity to be able to fully

21 │ and effectively argue at sentencing that the extremely

22 │ harsh conditions and treatment of the defendant warrant

23 │ some type of reduction of sentence.  There's no doubt that

24 │ that is extremely material to the sentencing.  The 14

25 │ summaries, in my opinion, adequately address that without

1    compromising national security.  The information withheld

2    does not further that legitimate need in the opinion of

3    the Court.  I would also say that the degree of detail

4    that exists in the documents themselves is not as great in

5    many situations as you might think.

6            The request for information requesting

7    interrogation techniques, in regard to that the Court

8    finds the deletion of certain documents from discovery is

9    appropriate.  I should -- let me go back.

10           I should have started by talking about CIPA 4

11   because that's the standard that the Court is required to

12   apply here.  Under CIPA the Court must find that the

13   Government has made a sufficient claim that classified

14   information is protected by national security privilege

15   and requires protection against unauthorized disclosures

16   for reasons of national security.  I'm satisfied in this

17   situation that that showing has been made.

18           After such a showing is made, then in looking at

19   the information, at the documents, whatever it is, the

20   Court has three choices that can be employed.  One:  The

21   Court may authorize the deletion of certain documents from

22   discovery.  And at this point and time anyway, that's

23   where I am on the interrogation techniques.  I will point

24   out, however, that there is one issue regarding that that

25   is still pending in regard to the request that I made of

1   counsel for the Government in my second ex-parte phone

2   call.

3         The second possibility is the substitution of a

4   summary for certain classified information contained in

5   such classified documents and that's what we have here in

6   the 14 summaries that have been so far provided.

7         The third possibility is the substitution of a

8   summary or stipulation admitting relevant facts that the

9   classified information would tend to prove.  So to be

10  discoverable, the information under CIPA, the Court is

11  directed to view it carefully and where information is so

12  interrelated to classified information that the filing of

13  meaningful redacted materials would not be possible

14  without divulging classified information, summaries of the

15  classified documents can be approved and provided to the

16  defense in discovery while the originals are

17  undiscoverable.

18        As mentioned during the arguments, the

19  information must be both relevant and helpful to the

20  sentencing issues before the Court.  Where the information

21  is not both relevant and helpful, it can be withheld from

22  discovery.  Moreover, the discovery value must not be

23  outweighed by the potential danger to national security

24  that would follow the disclosure.  So where the Court

25  finds that it is both relevant and helpful, resolving the

1    issue calls for balancing, protecting the flow of

2    information against the individual's right to prepare his

3    defense.

4         I would note at this time, and certainly defense

5    counsel has no reason to be fully assured by this, but

6    it's not a situation where the defendant has been forced

7    to simply accept the Government's representations.  The

8    documents have been submitted and independently reviewed

9    by the Court and the Court has determined in regard to the

10   first protective order that the information that was not

11   provided would not be both relevant and helpful to the

12   defendant's ability to prepare for any sentencing issues.

13        As I said before, secondly the defendant is

14   demanding a level of detail or subject matter that is

15   simply not present in the classified documents that I've

16   looked at.

17        Concerning the second protective order that's

18   pending with the Court, one of the items is the video of

19   interrogation and, as I said, the Government has -- I

20   think I can go insofar as to say that the Government has

21   tendered a proposed summary to the Court and after viewing

22   the video, reading the summary, the Court has made certain

23   recommendations to counsel for the Government concerning

24   the video, but I've not heard back from them yet and

25   hopefully that will be next week.

1               Concerning the request for documents dealing

2     with the discovery materials concerning the destruction of

3     most of the recordings of interrogation sessions, that is

4     also pending.

5               As to both the video and this last matter, I

6     have no hesitation finding today that the Government has

7     made sufficient showing of national security privilege,

8     but that matter is still pending.  I have made a request

9     to the Government concerning that matter and hopefully

10    that will be resolved next week.

11              So I believe I had three major requests for

12    information or for action concerning some of this

13    classified information that I need to hear the

14    Government's response to.  If the recommendations of the

15    Court are satisfied by the Government, then I believe I'll

16    be able to go ahead and enter the second protective order.

17    If they are not approved or to the extent to which they

18    are not approved, then I expect that there will be a need

19    for this information, the information at issue, to be

20    provided to defense counsel and then we can have an

21    argument, in camera argument, on any of the unresolved

22    issues.

23              So that's where I am at this point as candidly

24    as I can state it to you.  Is there anything else that we

25    should discuss today?

1              MR. SMITH:  Your Honor, one other matter, a

2     logistical matter that relates to the sentencing.  Several

3     months ago Mr. Al-Marri had requested a DVD which I have

4     here that's called -- it's mostly in Arabic, but the

5     biggest reference is Islamic heritage and because of

6     various difficulties with the Bureau of Prisons that could

7     not be provided to him as a religious text so he could

8     practice his religion.  However, one of the things we were

9     contemplating for sentencing was perhaps to call an

10    Islamic scholar to provide some context and background for

11    Mr. Al-Marri's conduct.  For several reasons we have

12    decided not to go in that direction.  What we would like

13    to do is to be able to offer perhaps some excerpts from

14    some recognized text on Islam and Islamic law.  We think

15    this DVD that I have would be able to do that.

16             The problem is because of the Bureau of Prisons

17    regulations, it's not acceptable for them to just -- for

18    this to go through them to Mr. Al-Marri.  What we would

19    like to do and what we would ask the Court, because we're

20    now using this not just for his religious practices but in

21    preparation for sentencing, if we could get an order from

22    the Court to permit that and I don't know whether that

23    means --

24             THE COURT:  To permit him to have it?

25             MR. SMITH:  To have it, review it.  It's all in

1  Arabic.

2          THE COURT:  How long is it?

3          MR. SMITH:  It says -- 12,000 I think is what it

4  says, so he needs to go through it and --

5          THE COURT:  I still don't understand your

6  answer.  How long is the video?

7          MR. SMITH:  It's not a video.  It's a DVD.

8          THE COURT:  How long is the DVD?

9          MR. SMITH:  It's just one and it has 12,000

10  pages or --

11          THE COURT:  Well, is the defendant previously

12  familiar with this?

13          MR. SMITH:  Yes.  He had it at the naval brig.

14          THE COURT:  Here's where I am.  The Bureau of

15  Prisons has been very gracious to accommodate this

16  situation.

17          MR. SMITH:  Yes, they have.

18          THE COURT:  It's virtually unheard of to have

19  someone being held pre-trial in a facility where he is.

20  I'm not going to abuse our welcome.  Having said that, if

21  it's possible for them to agree to something where he can

22  view this while you're there or even, if necessary, have

23  him brought over here for a day or whatever so that he

24  could go over this with you and review it, that's fine.  I

25  don't want to deny him the opportunity to do it.  I also

1  don't want to start giving orders to the Bureau of Prisons

2  under these circumstances.

3          MR. SMITH:  Well, in the first instance we'll

4  try to work it out with the Bureau of Prisons and if it

5  can't be accommodated, we'll suggest that and bring him

6  here then.

7          THE COURT:  Okay.  Anything else?  All right.

8  Thank you very much.  Have a safe trip home.

9

10              **\* \* \* HEARING CONCLUDED \* \* \***

11

12

13                  **REPORTER'S CERTIFICATE**

14          I, Karen S. Hanna, certify that the foregoing

15  transcript constitutes a true and accurate transcript of

16  the original shorthand notes of the proceedings had at the

17  time and place aforesaid before the HONORABLE MICHAEL M.

18  MIHM, U.S. District Judge.

19

20                          s/Karen S. Hanna
                   _____
21                          Karen S. Hanna, C.S.R.
                            License #084-001760

22

23

24

25