E-FILED[1]

Tuesday, 22 September, 2009  03:11:28 PM
Clerk, U.S. District Court, ILCD

1    IN THE UNITED STATES DISTRICT COURT
      FOR THE CENTRAL DISTRICT OF ILLINOIS
2

3

4

5   UNITED STATES OF AMERICA,            )
                                         )
6                      Plaintiff,        ) Criminal No.
                                         ) 09-10030
7            vs.                         ) Peoria, Illinois
                                         ) September 21, 2009
8   ALI SALEH KAHLAH AL-MARRI,           )
                                         )
9                      Defendant.        )

10

11

12       TRANSCRIPT OF TELEPHONE CONFERENCE CALL

13

14

15                    BEFORE:

16           HONORABLE MICHAEL M. MIHM
              United States District Judge
17

18

19

20

21

22

23

24

25

1                    APPEARANCES:  (By Telephone)

2


3                    DAVID E. RISLEY, ESQ.
                Assistant United States Attorney
4                    318 S. Sixth Street
                  Springfield, Illinois  62701
5
                         -- and --
6
                    MS. JOANNA BALTES
7                   Department of Justice
                  Counterterrorism Section
8                 950 Pennsylvania Avenue NW
                   Washington, DC  20530
9            (Appeared on Behalf of the Government)


10
                    L. LEE SMITH, ESQ.
11                  Hinshaw & Culbertson
                 416 Main Street, Suite 600
12                  Peoria, Illinois  61602

13                       -- and --

14               ANDREW J. SAVAGE III, ESQ.
                   Savage & Savage, P.A.
15                   15 Prioleau Street
               Charleston, South Carolina  29401
16
                         -- and --
17
                 LAWRENCE S. LUSTBERG, ESQ.
18                     Gibbons PC
                   One Gateway Center
19               Newark, New Jersey  07204
             (Appeared on Behalf of the Defendant)
20

21

22

23                 Karen S. Hanna, C.S.R.
                 U.S. District Court Reporter
24                Central District of Illinois
        Proceeding recorded by mechanical stenography, transcript
25      produced by computer

```
 1            THE COURT:  This is case number 09-10030.  Is
 2   Mr. Al-Marri on the phone?
 3            THE DEFENDANT:  Yes, Your Honor.
 4            THE COURT:  Lee Smith?
 5            MR. SMITH:  Yes, Your Honor.
 6            THE COURT:  Andrew Savage?
 7            MR. SAVAGE:  Yes, sir.
 8            THE COURT:  Lawrence Lustberg?
 9            MR. LUSTBERG:  Yes, Your Honor.
10            THE COURT:  David Risley?
11            MR. RISLEY:  Yes.
12            THE COURT:  Joanna Baltes?
13            MS. BALTES:  Yes, Your Honor.
14            THE COURT:  Okay.  We set this up because I
15   think Mr. Smith and Mr. Savage indicated to my secretary
16   that there was some problem or unresolved situation or
17   dispute of some sort concerning discovery, so here's the
18   opportunity to discuss it.
19            MR. SMITH:  Thank you, Your Honor.  This is Lee
20   Smith.  Mr. Savage and I were down here at the prison in
21   Pekin on Friday with our client and it occurred to us that
22   we probably ought to bring to the Court's attention some
23   delays that we have experienced in the delivery of
24   discovery that has been requested and specifically the
25   logs that were the subject of some discussion at the
```

1    hearing on September 3.

2              If you recall, these were the logs from the brig

3    at Charleston and I think at that hearing Ms. Lever had

4    said that they were -- they had some problems with the

5    documents because -- they were electronic problems, I

6    think she said, and the Court at that time said, well,

7    that this had to be given a high priority, and Ms. Lever

8    said she expected the documents would be produced the

9    following week and in fact they were not produced the

10   following week nor the week after, which was last week,

11   and this has become a critical delay.  We just received --

12             THE COURT:  You still don't have them?

13             MR. SMITH:  No, Your Honor.  And we received the

14   pre-sentence report on Thursday, the draft of that.  There

15   are some parts of that pre-sentence report where we may

16   need the logs to respond to that.  I understand from an

17   exchange of e-mail between Mr. Lustberg and Ms. Baltes

18   that perhaps those documents will be received this

19   afternoon or sometime today, but the fact of the matter is

20   we haven't received those yet and those documents are, as

21   I say, critical not only to respond to the pre-sentence

22   report, but also there may be videos that we would seek to

23   view based upon those logs.  So we have provided a list of

24   the videos that we want, but there may be others depending

25   on what those logs --

1              THE COURT:  Well, have the videos been provided?

2              MR. SMITH:  No, Your Honor.  Well, I think we

3    have provided just within the last, I think earlier today

4    perhaps, a list of the dates we wanted the videos on, but

5    those we have not received.

6              THE COURT:  All right.  Ms. Baltes, what's the

7    response?

8              MS. BALTES:  I mean, first I would like to say

9    if Mr. Smith or Mr. Savage had called me last week, I

10   would have been able to tell them the same thing that I

11   will tell you, Your Honor, that there is about 13,000

12   pages of electronic discovery that I probably will be able

13   to e-mail to Mr. Lustberg today.  And I do apologize for

14   the delay.  I know Ms. Lever indicated in court that it

15   would hopefully be produced the following week.  The

16   following week I was able to get the rest of the summaries

17   out that the Court had approved, but unfortunately we had

18   to go back to the brig and have them reburn all of the

19   electronic discovery for us because we couldn't make any

20   headway with the disk that we had, so I have -- we had to

21   deal with some priority issues with the software, which we

22   are still playing with the second disk, but we were able

23   to get that done and I then had to review the 13,000

24   pages, which I finished doing over the weekend, and they

25   are right now in the process of being Bate stamped and I

1    think about 9,000 pages are done and I expect probably in

2    the next hour the rest of it will be done and it will be

3    able to be e-mailed to Mr. Lustberg.  So we understand

4    that it is of priority to the defense and we have been

5    working as diligently as possible to get the discovery to

6    them.

7              As far as the videos, I had discussed this back

8    when I was at the brig in June.  I think the defense is

9    well aware that there were videos of every single second

10   and minute of the defendant's time that he spent at the

11   brig.  And at that time I indicated that if they were

12   interested in viewing some of those videos, I needed the

13   dates and I did receive those dates today.  I spoke with

14   Mr. Lustberg about it and because some of the dates

15   coincide with some of the interrogation sessions, those

16   videos need to be -- originally we talked about having

17   Mr. Savage go to the brig and review them himself, which I

18   was happy to try and facilitate.  I spoke to the brig

19   about that.  Because some of the dates of the videos they

20   are requesting coincide with the interrogation sessions, I

21   need to review those videos to make sure that there's no

22   interrogation staff that appears on those videos.

23              THE COURT:  How many videos have been requested?

24              MS. BALTES:  The request that I received today,

25   I think it's over 30.

1           THE COURT:  All right.

2           MS. BALTES:  Looks like it's actually -- it's

3    many more than that actually.  It's probably 50.  Larry,

4    I'm not sure when you compiled this if you took a count of

5    that.  I'm trying to count the dates you sent me today.

6           THE COURT:  Well, wouldn't it make some sense,

7    Mr. Savage, for you to, once she does whatever has to be

8    done before you look at them, for you to go to the brig

9    right away and look at them and find out which ones you

10   want copies of instead of causing more copies to be made

11   than may be --

12          MR. SAVAGE:  Judge, this is Andy Savage.  I

13   would be more than happy to do that.  The one caveat that

14   we should make you aware of is those dates may change upon

15   production of the logs.  As you can imagine, all those

16   dates seem to run together with our client and he has

17   given us indications of what we should look for, but if we

18   have the logs then we could focus in on those particular

19   dates.  It may, in fact, cut down on the number of

20   videotapes we're looking for and, on the other hand, it

21   may increase the number, but we're looking for very

22   specific things in those tapes.

23          THE COURT:  By the way, I should have mentioned

24   and forgot at the beginning.  We do have one

25   representative from the news media here because this

1    hearing is open to the public.  Andy Kravetz from the

2    Journal Star is here.

3              Well, so this 13,000 pages, is that the universe

4    of information, Ms. Baltes, that they had requested?

5              MS. BALTES:  That is the last piece of

6    outstanding discovery that we were in the process of

7    providing.  Obviously now since then and once the defense

8    has an opportunity to look at it, I'm expecting, yes, that

9    the dates might change for the videos, but the videos is

10   something that has come up recently.  This isn't the

11   subject of the same discovery requests back in May and

12   June that we've been working on.  So obviously we will do

13   everything we can to accommodate, but, you know, there are

14   a lot of dates that the defense is requesting for the

15   videos, so it does take time unfortunately to go through

16   and look at those and make sure there's nothing on there

17   that would be something that the Government would be

18   concerned about.

19             THE COURT:  I agree with that, but let me make a

20   couple of comments.  First of all, I'm not real happy

21   about the fact that these 13,000 pages are just being

22   turned over today.  I understand that there were problems,

23   but I also, I thought, made it clear at the last hearing

24   that I wanted this expedited.  Secondly, in terms of --

25   and as I understand it, the 13,000 pages are going to be

1 │ turned over today.  Is that right?

2 │        MS. BALTES:  Yes.  There's six files that I will

3 │ be sending to Mr. -- five files.  Four of them are ready

4 │ to go.  I am waiting on the last one.  Since we have been

5 │ on the call, I think I have received the last one via

6 │ e-mail, so they will be able to be e-mailed.  They will be

7 │ in PDF format.  So those will be transmitted as soon as we

8 │ finish this call today.

9 │        THE COURT:  In terms of the videos, you said you

10 │ have to look at them?

11 │        MS. BALTES:  Well, I mean back in June I said I

12 │ need to know what --

13 │        THE COURT:  I understand that, but the point I

14 │ want to make is you're not the only one who works in this

15 │ unit.  Can't someone help you with that or other people do

16 │ it in a more committed manner?

17 │        MS. BALTES:  Well, I certainly will -- I

18 │ certainly will enlist help as needed to view it, but, I

19 │ mean, I guess I feel it's a little unfair for me to be on

20 │ the hook for these videos when I'm just getting the dates

21 │ today.  I will do everything I can to --

22 │        THE COURT:  Well, what was used as the basis for

23 │ the dates that you were given today?  Is that --

24 │        MS. BALTES:  I don't know.  I mean, that's what

25 │ I've been -- when I was back at the brig, I indicated to

1    the defense and I think they are well aware there has been

2    video from every single day and that if they were

3    interested in those -- because at the time I was at the

4    brig, I said we're not copying every single minute of

5    every single hour for the last year.  No, they said,

6    that's reasonable.  Of course we will let you know if we

7    want to see any specific one.  So today I received the

8    specific dates.

9                THE COURT:  Mr. Smith, Mr. Savage, what did you

10   base these dates on you're asking for?

11               MR. SAVAGE:  Your Honor, first of all,

12   Mr. Lustberg in his letter to Mr. Risley of May 18 on

13   page 2, full paragraph 3, asked for all the audio and

14   video recordings, so it's somewhat disingenuous to say

15   this has been a delayed request.  The dates that we

16   selected that were provided by Mr. Lustberg to the U.S.

17   Attorney today were based on guesses that we made

18   consistent with the summaries that Your Honor has provided

19   to us.  We don't know, however, whether or not those dates

20   that are listed in the summaries are actually

21   authenticated or the Government has not certified those

22   dates to be accurate, so we are relying on those summaries

23   for approximate dates of what we are looking for.

24   Certainly we expected to see the logs some time ago.  This

25   was not a matter that was developed in the September 3

1   hearing, but it was a matter that developed in prior

2   hearings before this Court.  You will recall that Your

3   Honor has urged the Government to provide these logs.  The

4   reason that these logs are so important is that it will

5   give reminders to our client, Mr. Al-Marri, so when we

6   refer to the specific dates we will be able to talk to

7   Mr. Al-Marri who hopefully then his memory will recollect

8   a specific instance of the incidents we're looking for on

9   those dates.

10         THE COURT:  Well, you will have the logs today.

11  I guess the question --

12         MR. SAVAGE:  -- all 36,000 lines of them, which

13  means they're going to Mr. Lustberg.  He will send them to

14  me.  I will travel to Peoria and sit down with

15  Mr. Al-Marri, so --

16         THE COURT:  Thank you.

17         MR. SAVAGE:  So it's --

18         THE COURT:  I'm well aware of how much 13 -- I'm

19  well aware of how much 13,000 is.  What I'm trying to do

20  is figure out the best way to get this done in the most

21  orderly fashion.

22         The question that comes to my mind is because of

23  the fact that the request you've made for videos is

24  somewhat unscientific at this point because you haven't

25  had the logs, what is everyone's sense as to whether or

1    not we should go ahead and try to get these 30-plus videos

2    cleared for review as quickly as possible or does it make

3    more sense to check the logs first?

4                MS. BALTES:  Well, I just also want to mention,

5    too, that the discovery that was provided from the brig,

6    the approximate 600 pages, certainly provided a lot of

7    information about dates that the defense might have been

8    interested in, so I don't know if you can use that to

9    narrow it down.  Obviously you will have the logs today,

10   but --

11               THE COURT:  Well, let me ask defense counsel,

12   the requests that you made today, are those based in part

13   on the information you have from the 600 pages?

14               MR. SMITH:  This is Lee Smith.  Mr. Al-Marri

15   informs me that -- and he has reviewed those 600 pages and

16   he tells me that they really don't provide enough detail

17   to be able to request specific videos.

18               MR. SAVAGE:  Although, Judge, Mr. Al-Marri did

19   participate in trying to guesstimate the dates that we

20   were looking for based on those 600 pages.

21               THE COURT:  Well, my question is this.  I mean,

22   everybody is concerned about the rightness of their

23   position or the wrongness of somebody else's position.

24   Here we are.  It is now the 21st of September.  Based on

25   the fact that the 13,000 pages are going to be delivered

1   today and the fact that the 30-plus video requests have

2   been made as of today, what is the most sensible way to

3   proceed here so we can maintain our two sentencing days of

4   October 28 and 29?

5                    THE DEFENDANT:  Your Honor, Your Honor --

6                    THE COURT:  Who is speaking?

7                    THE DEFENDANT:  This is Al-Marri.

8                    THE COURT:  Well, I really think it's a mistake

9   for you to talk, sir.  I think you should speak through

10  your attorneys.

11                   MR. SAVAGE:  Your Honor, I will speak for

12  Mr. Al-Marri with the understanding that what he told me

13  on Friday remains accurate and that is that he desires to

14  move forward on the sentencing date the Court has already

15  suggested.  He has also asked me to ensure that his

16  attorneys are properly prepared for that sentencing

17  hearing.  So as I understood his position, I report to the

18  Court that he does not want the sentencing date to be

19  changed, but he also does not want to get anything less

20  than a full effort from his defense team to mitigate the

21  sentence the Court might impose.

22                   THE COURT:  Well, that's fine.  I think we can

23  all agree on that.

24                   MS. BALTES:  Maybe I can suggest -- I mean,

25  generally from the dates that I looked at today, obviously

1  they're seeking video that would show Mr. Al-Marri either

2  coming to or going to interrogation sessions or what his

3  feelings were around those dates.  I mean, I don't think

4  that there's any reason why the Government wouldn't

5  stipulate if Mr. Al-Marri wants to let you know what he

6  was feeling, that that was in fact true, and I understand

7  you might want video to show that to the Court, but maybe

8  if you could minimize the number of videos you're

9  interested in as opposed to the list I got today, you

10 know -- I mean, certainly the Government understands what

11 you're trying to do with the videos and we don't --

12 there's nothing that concerns us and there's no objection

13 we have to you making that demonstration to the Court, but

14 maybe we can cut down the number of dates that you're

15 looking for to make it feasible because there's an awful

16 lot of video we're going to have to go through for the

17 dates that you gave me today.

18           THE COURT:  Well, let me ask this.  Have defense

19 counsel considered the possibility of submitting a

20 proposed set of stipulations to the Government that would

21 address -- who knows what?  Can --

22           MR. SAVAGE:  Actually, yes, we have done that

23 and Mr. Lustberg is prepared to move forward on that list

24 of stipulations that we compiled approximately a month ago

25 in anticipation that the deadline was getting closer and

1    perhaps we could reach some consensus.  Is that correct,

2    Larry?

3            MR. LUSTBERG:  Yes, I'm happy to finalize that

4    and we haven't talked about that for a few weeks, but in

5    light of today's session we will certainly do that.

6            MS. BALTES:  And Mr. Lustberg and I also

7    discussed the possibility of using stipulations for some

8    of the witnesses that you are seeking, particularly from

9    the Navy that are spread out all over the world at this

10   point, and the Government has indicated we're happy to do

11   that.  We're not -- you know, the facts I think you want

12   to get before the Court are not facts that the Government

13   disputes.

14           THE COURT:  Well, first of all, I would strongly

15   encourage the parties to explore stipulations, not a week

16   from now but as soon as possible, so that it may be that

17   to some extent some of the information that you're seeking

18   through that will become evident in the 13,000 pages or

19   the videos may well not be in dispute and you may be able

20   to focus your attention much more carefully on what it is

21   you really need.  Having said that -- and I do direct you

22   to immediately, to as soon as possible have that

23   conversation concerning stipulations.  Secondly, I do

24   expect that this 13,000 pages will be electronically

25   delivered today.  I also direct that the videos that have

 1  been specifically requested, that someone will as soon as

 2  possible conduct the review of those so that they can be

 3  turned over for viewing, made available for viewing by

 4  defense counsel at the earliest opportunity.  And I would

 5  remind both sides that the Government's brief on

 6  sentencing is due on October 2 and the defendant's brief

 7  is due on October 16, so we're really getting down to

 8  crunch time here I think.

 9          MR. SMITH:  Judge, one question.  I think I

10  heard this a couple of different ways and I want to make

11  sure when we get it that it's complete or not.  I think

12  the Court said 13,000 pages and then I think I remember

13  somebody else saying it was 13,000 lines.

14          MS. BALTES:  360,000 lines and it's 13,000

15  pages, approximately 13,000 pages.

16          MR. SMITH:  That's fine.

17          THE COURT:  All right.  Anything else?

18          MR. SAVAGE:  Judge, we have made requests to

19  interview certain civilian and military members of DOD.

20  That request was made on a timely basis in accordance with

21  the wishes of the Government.  We have not gotten anywhere

22  with that.  I have advised the Government I'm willing to

23  travel, not to inconvenience those members of the military

24  or the civilian members employees of DOD.

25          THE COURT:  Well, this again might be another

1   situation where stipulations could be worked out, but what

2   is the status --

3            MR. SAVAGE:  The problem is I would like to

4   speak to the witnesses so that I would not ask for a

5   stipulation on something that the witness himself or

6   herself cannot support.

7            THE COURT:  All right.  Well, what is the status

8   of that, Ms. Baltes?

9            MS. BALTES:  I spoke to Mr. Lustberg about that

10  today.  He indicated -- I mean, just so you know, the

11  witness requests were sent to the Navy and the Navy began

12  the process of trying to track down where the witnesses

13  were and in many cases, most cases, they are not at the

14  brig any more.

15           MR. SAVAGE:  Well, actually we submitted the

16  request in accordance with the federal law just as we did

17  for the bond hearing and the response we received from DOD

18  was within 48 hours.

19           MS. BALTES:  I'm not -- I am the Government and

20  I understand that I'm representing the Government, but

21  your request was made to the Navy and the Navy has certain

22  things they have to do to track their witnesses down.

23  That's --

24           MR. SAVAGE:  That request was made to the

25  Department of Justice who received a copy of the letter

 1  send to the statutorily required address we were to send

 2  it to.

 3          MS. BALTES:  I understand that and, again, as I

 4  spoke to Mr. Lustberg today, we've been talking about

 5  stipulations because the message I received was that

 6  you're not interested in having all the witnesses fly

 7  around from all over the country, all over the world, and

 8  if you could do something over the telephone and I

 9  suggested a stipulation either a week or two ago, if that

10  would work out, so that's not --

11          THE COURT:  Let me make a couple of comments.

12  First of all, I don't care whether it's done through DOJ

13  or the Department of the Navy.  I find it very difficult

14  to believe that the location of military personnel cannot

15  be determined within say 24 hours.  I mean, that's just --

16  I would be amazed.  And in fact if it's not true, then I'm

17  worried.  It should not be a big deal to find out where

18  these people are.

19          Secondly, I would certainly encourage the idea

20  of talking with them over the phone so that nobody has to

21  travel.  Third, again, stipulations would be great.  I can

22  understand why they may want to talk to the witness first.

23  Then, last, it seems to me that to some extent defense

24  counsel need to coordinate what you're doing or what's

25  going on better than what it sounds like now.

1           So having said all that, does anybody else have

2    anything today?  I expect that the locations of these

3    people that have been identified -- I don't care how you

4    do it, but if it's not done in 48 hours, I want to know

5    about it.

6           MS. BALTES:  Judge, I believe that that has been

7    done and the additional information I believe -- and I

8    know there were a couple of different requests for either

9    witnesses from the Navy and maybe some other military

10   organization or some other branch of the forces, but the

11   additional information was what were they interested in so

12   that the Navy wasn't tracking down ten different witnesses

13   that really had nothing relevant to say.  So I understand,

14   Your Honor.  I will make sure that I speak to the DOD

15   attorneys to find out whether they can set up some type of

16   phone call with the witnesses.  But if this information

17   was coming directly to me, it would definitely help

18   facilitate things for the defense.

19           MR. LUSTBERG:  Judge, this is Larry Lustberg.

20   We'll make --

21           THE COURT:  I'm having trouble hearing you,

22   Mr. Lustberg.

23           MR. LUSTBERG:  I'm sorry.  I'm on a cell phone.

24   You know, just in response to your observations that we're

25   not coordinated, I mean we have always insisted we wanted

1    the opportunity to speak to these people before we

2    consider stipulations, so there's no inconsistency there

3    at all.  I think Your Honor's observation in that regard

4    is that -- you know, we will make sure that we confirm

5    with her after speaking amongst ourselves exactly which

6    witnesses we're interested in.  I do believe there have

7    been requests on that.  We will confirm those and make

8    sure we're all on the same page.

9            MS. BALTES:  I understand there were requests

10   and I understand that you had downsized your requests, so,

11   again, if someone can give me the updated list of which

12   witnesses you're interested in, why you're interested in

13   them, then I will get with DOD to make sure that they try

14   to make them available for a phone call.

15           MR. LUSTBERG:  We'll talk because I think the

16   only witness that we downsized was one FBI witness.  We'll

17   discuss it and get back to you.

18           THE COURT:  Anything else today?

19           MR. SMITH:  Nothing from us, Your Honor.

20           THE COURT:  Anything else from the Government?

21           MS. BALTES:  No, Your Honor.

22           THE COURT:  All right.  Thank you.

23

24               * * * HEARING CONCLUDED * * *

25

1                    **REPORTER'S CERTIFICATE**

2

3              I, Karen S. Hanna, certify that the

4    foregoing transcript constitutes a true and accurate

5    transcript of the original shorthand notes of the

6    proceedings had at the time and place aforesaid

7    before the HONORABLE MICHAEL M. MIHM, U.S. District

8    Judge.

9

10                                  s/ Karen S. Hanna____
                                    Karen S. Hanna, C.S.R.
11                                  License #084-001760

12

13

14

15

16

17

18

19

20

21

22

23

24

25