IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09-CR-10030 |
| ) | |
| ALI SALEH KAHLAH AL-MARRI, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S COMMENTARY ON ISSUES REGARDING**
**PRESENTENCE REPORT AND SENTENCING GUIDELINES**

The United States of America, through its attorneys, Jeffrey B. Lang, Acting United States Attorney for the Central District of Illinois, acting through Assistant United States Attorney David E. Risley, and Michael J. Mullaney, Chief of the Counterterrorism Section of the Department of Justice, acting through Trial Attorney Joanna Baltes, comments as follows on issues regarding the Presentence Investigation Report ("PSR") and its calculation of the applicable advisory sentencing guideline range[1]:

1.  The PSR contains references to factual assertions made on the defendant's behalf by his attorneys (although they are attributed in the PSR to the defendant), but which are unsupported by any evidence in the record. Factual representations by counsel are not evidence. *United States v. Delatorre*, 406 F.3d 863, 867 (7th Cir. 2005) (PSR's reference to counsel's assertion on defendant's behalf that defendant abandoned his

---

[1] Because the Government's Sentencing Memorandum was due and filed on October 2, 2009, and the defendant's letter to the Probation Office raising objections to the PSR was not sent until five days later, on October 7, the Government had no opportunity to respond to those objections in its initial memorandum.

course of drug dealing between drug transactions involved in convictions was not evidence); *United States v. Purchess*, 107 F.3d 1261, 1268 (7th Cir. 1997).

  2. <u>PSR Paragraph 48</u>.  For example, paragraph 48 of the PSR summarizes the stipulated facts in the Plea Agreement relating to the defendant's Internet research into cyanides and sulfuric acid, and the fact that research into those two substances was consistent with training provided by al Qaeda for manufacturing cyanide gas.  However, that paragraph also contains the sentence, "The defendant stated he looked on line at various chemical supplier websites and that he studied various commercial uses for cyanide compounds and sulfuric acid in order to possibly acquire chemicals to sell to a chemical company in Qatar where his cousin formerly worked."  That factual claim was made by the defendant's attorneys in correspondence to the Probation Office detailing their objections to the initial draft report, and is unsupported by any evidence in the record.[2]  As such, it is not evidence, and should not be considered as such by the Court.

---

  [2] The defense cannot point to the reports of its own computer forensic experts attached to its sentencing memorandum as evidence in support of its assertion in the PSR, for reasons beyond the facts that the reports are unsworn statements to which there is no stipulation, and patently biased.  One report confirms that the defendant used an Internet search engine to search for "sodium cyanide" and that he visited several weapons sites (Def. Sent. Memorandum Ex. 67) (a fact the other report fails to mention), but the examiner attaches no evidentiary value to those facts.  The other report's conclusion, "I saw no evidence consistent with an attempt by Mr. al-Marri to manufacture or obtain materials for a WMD [weapon of mass destruction]" is (1) outside the scope of the examiner's expertise, which is limited to objective reporting of what was found on the computer's hard drive, not opining on whether such evidence is consistent with a subjective intent to produce a WMD; (2) contrary to the reasonable inferences to be drawn from the nature of the evidence of chemical research found on the hard drive; and (3) based in part on the examiner's reported conversation he had with the defendant in which the defendant offered the same vague explanation for his interest in cyanides asserted by his attorneys in the PSR, which the examiner apparently accepted uncritically (Def. Sent. Memorandum Ex. 49).

3.     Moreover, even if the claim by defense counsel were evidence, it is too vague to be credible or given any weight. The assertion fails to name either the chemical company or cousin, and fails to explain why the defendant, rather than his cousin, would conduct such online research. Most significantly, the claim fails to even attempt an explanation of what possible commercial use existed for the combination of cyanides and sulfuric acid. That sentence in paragraph 48 containing an unsupported factual representation by defense counsel should, therefore, be disregarded or at least given no weight.

4.     <u>PSR Paragraph 56</u>. On a somewhat related note, in his Sentencing Memorandum the defendant objects to the two-level enhancement to his base offense level in paragraph 56 of the PSR, which was based on the application of Section 2M5.3(B)(1)(E) of the United States Sentencing Guidelines. That section states, in pertinent part, that such a two-level enhancement applies "[i]f the offense involved the provision of . . . material support or resources [to a designated foreign terrorist organization] with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act."

5.     The defendant claims application of that provision requires proof that the defendant anticipated a "particular" violent act, rather than simply "a" violent act. (Def. Sent. Memorandum, pp.64-66) He offers no authority in support of that novel proposition, relying instead on the language of the enhancement provision itself. However, nothing in the plain language of Section 2M5.3(B)(1)(E) suggests, much less

requires, such a counter-intuitive reading. All that provision requires is that the defendant had "reason to believe" that the material support or resources he agreed to provide to al Qaeda, namely his stipulated agreement to provide himself "to work under al Qaeda's direction or control," would be used by al Qaeda "to commit or assist in the commission of a violent act." The word "a" in "a violent act" plainly means that reasonable anticipation of only one (singular) violent act is sufficient to trigger application of the enhancement, not that the defendant must, in addition, anticipate a "particular" violent act.

6.    While the defendant does not expressly raise the claim, it would be implausible for him to take the position that he lacked "reason to believe" that he would be used by al Qaeda to commit, or at the very least assist in committing, a violent act. In the stipulated facts in the Plea Agreement, the defendant acknowledges that when he entered into the conspiracy he "knew that al Qaeda had engaged and was engaging in terrorist activity . . . , and . . . he entered into the agreement with the intent to further the terrorist activity and terrorism objectives of al Qaeda." (Plea Agreement, p.9) And, as stated in paragraph 38 of the PSR, the defendant admits knowing on 9/11 that al Qaeda was responsible for the attacks that day on the United States (although he denies having any advance knowledge of those attacks), and he admits that it "became obvious" to him that day why Khalid Sheikh Mohammad had directed him to enter the United States by 9/10. He cannot plausibly claim, nor does he expressly attempt to claim, that he lacked reason to believe that al Qaeda would use him to assist in the commission of further

terrorist acts of violence. He claims only that, because he lacked specific instructions or knowledge about any particular violent act, the enhancement in paragraph 56 of the PSR should not apply.

7.  That claim should be rejected, as a matter of principle, even though the maximum possible sentence of 15 years renders it irrelevant to the final calculation of the defendant's sentencing guideline range.

8.  <u>PSR Paragraph 58</u>. The defendant also claims that his offense level should be reduced by four levels, pursuant to Section 3B1.2(a) of the Sentencing Guidelines, because he claims he was a "minor participant" in the conspiracy to which he pled guilty. He correctly points out that, consistent with Application Note 3(A) of the amended Commentary to Section 3B1.2, he is entitled to consideration for such an adjustment despite the fact that his sentencing guideline range in the PSR was otherwise calculated solely on the basis of his own offense conduct. *See United States v. Hill*, 563 F.3d 572, 576-80 (7th Cir. 2009). However, to be eligible for consideration for such an adjustment is far different from being entitled to it. Moreover, the defendant correctly notes that he carries the burden of demonstrating his entitlement to a role in the offense reduction. (Def. Sent. Memorandum, p.66)

9.  Application Note 3(A) to Section 3B1.2 states:

> This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.
> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a

5

>limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense whose role in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

Application Note 3(C) states:

>The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted.

Finally, and most significantly, Application Note 4 states:

>Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under the provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

10. Here, the defendant is only being held accountable in the PSR for his own conspiratorial agreement and activity, which was to provide material support and resources to al Qaeda, in the form of *himself*. He is not charged with or being held accountable in the sentencing guideline calculation in the PSR for conspiring to commit the 9/11 attacks or any other past act of terrorism by al Qaeda, although those terrorist acts unquestionably constitute part of the context in which the defendant entered into and persisted in his conspiratorial agreement. Instead, the conspiracy at issue in this case is

centered on the defendant, personally. The object of the conspiracy was for the defendant – and no other person with whom he can be compared – to enter the United States to act, as he himself describes and stipulated, as a "sleeper agent" for al Qaeda, "to work under al Qaeda's direction and control . . . with the intent to further the terrorist activity and terrorism objectives of al Qaeda." (Def. Sent. Memorandum, p.65; Plea Agreement p.9) As much as the defendant would like to place himself at the fringe of that conspiratorial agreement, the fact is that it all centered on him and his mission to act as an al Qaeda sleeper agent inside the United States, there to be used to further the terrorist activity and terrorism objectives of al Qaeda. Without the defendant's agreement, preparation, and personal activities to achieve the objectives of that agreement, the charged conspiracy for which he is being held accountable would not have existed.

11. Moreover, as part of the context for that agreement, the PSR notes – and the Court should consider – the stipulated facts regarding the nature and extent of the steps the defendant undertook to prepare for his agreed al Qaeda mission as a sleeper agent, as well as his knowledge about al Qaeda's terrorist activities and terrorism objectives. As stated in the Plea Agreement:

> Between 1998 and 2001, the defendant attended various terrorist training camps because he wished to engage in jihad. While at these terrorist training camps, the defendant participated in a number of courses where he learned, among other things: 1) basic military training, including the use of various weapons and basic operational security tradecraft that al Qaeda associates employed which allowed those engaged in terrorist operations to avoid detection, conceal the true nature of their communications, and generally protect their operations. These methods included the use of prearranged codes and various other techniques to

protect communications, counter-surveillance techniques, and the protection of information on computers.

During these trips to the training camps, the defendant stayed in safehouses in Pakistan which the defendant agrees the government would prove were run by and for the benefit of al Qaeda.

During this same time period, the defendant met Khalid Sheikh Mohammed and other members and associates of al Qaeda. The defendant offered his services to al Qaeda. In 2001, the defendant was approached by Khalid Sheikh Mohammed, who was then the external operations chief for al-Qaeda, about assisting al Qaeda operations in the United States. The defendant agreed to do so and knew at the time that he entered into the agreement with Khalid Sheikh Mohammed to assist al Qaeda operations in the United States that he was providing himself to al Qaeda to further al Qaeda's terrorist objectives. The defendant was instructed by Khalid Sheikh Mohammed to enter the United States no later than September 10, 2001, with an understanding that he was to remain in the United States for an undetermined length of time.

When the defendant agreed to the operation, he was aware that al-Qaeda was responsible for attacks against the United States, including the 1998 bombings of two United States embassies in East Africa, and the 2000 attack on the USS Cole. In addition, the defendant was aware of the 1996 and 1998 "fatwas" issued by Usama bin Laden against the United States.

(Plea Agreement, pp.10-11) Those preparations for his mission and knowledge of the nature of the terrorism objectives for which al Qaeda would seek to use his services as a sleeper agent, plus the later acts to which the defendant stipulated in the Plea Agreement, are not those of a fringe player or some unwitting dupe in the charged conspiracy for which he is accountable.

12.     Because he is only being held accountable for his own agreement to act as an al Qaeda sleeper agent, and nothing more (or less), the defendant lacks any relevant

point of reference against which to compare himself in making the comparative culpability determination required by his argument. If the defendant, as he appears to be, is asking the Court to compare his culpability to the broader culpability of his named co-conspirators, Khalid Shaykh Mohammad and Mustafa al-Hawsawi, he ignores the widely publicized fact that both are currently facing trial before a military commission in what was referred to the commission as a capital case. *See*, http://www.defenselink.mil/news/d20080509Mohammed.pdf. In comparison, the maximum potential sentence of 15 years of imprisonment in this case adequately takes into account any lesser degree of culpability the defendant played in al Qaeda's overall operations.

13.    All of the arguments raised by the defendant in his Sentencing Memorandum, and more, were fully considered and weighed in the balance by the government when it agreed to dismiss count 2 of the indictment. But for that agreement, the advisory sentencing guideline range would be over 15 years even if all of the defendant's arguments were accepted. No further sentencing concession is merited.

WHEREFORE, for the foregoing reasons, as well as those stated in the Addendum to the PSR and the Government's Sentencing Memorandum, it is requested that the Court adopt the positions and arguments of the Probation Office and the government regarding the calculation and proper application of the advisory United States Sentencing Guidelines, and impose a sentence of 15 years of imprisonment.

                                            Respectfully submitted,

                                            THE UNITED STATES OF AMERICA

Date: October 23, 2009            By:  s/ David E. Risley
                                            David E. Risley, Illinois Bar No. 6180387
                                            Assistant United States Attorney
                                            318 South Sixth Street
                                            Springfield, IL 62701
                                            Telephone (217) 492-4450
                                            Fax: (217) 492-4512
                                            david.risley@usdoj.gov

                                            Joanna P. Baltes
                                            Trial Attorney, Counterterrorism Section
                                            National Security Division
                                            Department of Justice
                                            joanna.baltes@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on <u>October 23, 2009</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Lawrence F. Lustberg,
>Andrew J. Savage, III,
>L. Lee Smith, and
>Mark A. Berman,
>Attorneys for Ali al-Marri

s/ David E. Risley
David E. Risley, Illinois Bar No. 6180387
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701
(217) 492-4450
Fax: (217) 492-4512
david.risley@usdoj.gov
